**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | |
|---|---|
| **Savantage Financial Services, Inc.,** <br> **Plaintiff,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | **Public Version** <br><br> **No. 1:08-cv-21** <br> **(Judge Futey)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD**

Timothy Sullivan
1909 K Street, N.W., 6th Floor
Washington, D.C. 20006
(202) 585-6930 (tel.)
(202) 508-1028 (fax)

Attorney of Record for Plaintiff
Savantage Financial Services, Inc.

Of Counsel:

Katherine S. Nucci
Thompson Coburn LLP
1909 K Street, N.W., 6th Floor
Washington, D.C. 20006
(202) 585-6900 (tel.)
(202) 585-6969 (fax)

Dated: February 29, 2008

4695455.1

## TABLE OF CONTENTS


I. THE COURT HAS JURISDICTION TO DECIDE THIS CASE AND PLAINTIFF HAS STANDING ....................2

A. DHS's_Brand Name Justification Is Reviewable By This Court ....................3

B. Plaintiff Has Standing To Bring This Action ....................9

II. DHS'S ACTIONS WERE NOT LEGALLY JUSTIFIABLE AND ITS BRAND NAME JUSTIFICATION WAS ARBITRARY AND CAPRICIOUS ....................10

III. PLAINTIFF HAS SATISFIED THE REQUIREMENTS FOR INJUNCTIVE AND DECLARATORY RELIEF ....................13

IV. CONCLUSION ....................15

## TABLE OF AUTHORITIES

**CASES AND GAO DECISIONS**

*Advanced Systems Technology, Inc. v. United States,* 69 Fed.Cl. 474 (2006) ..... 3, 14-15

*Aero Corporation v. Department of the Navy,* 540 F.Supp. 180 (D.D.C. 1982) ..... 11, 12

*ATA Defense Industries, Inc. v. United States,* 38 Fed.Cl. 489 (1997) ..... 9

*Automation Engineering, Inc.*, B-239782 *et al.*, Sept. 20, 1990, 90-2 CPD ¶ 240 ..... 11

*Berkey Marketing Companies*, B-224481, B-224489, Nov. 20, 1986, 86-2 CPD ¶ 596 ..... 11

*CCL Inc. v. United States,* 39 Fed. Cl. 780 (1997) ..... 9, 10, 11, 12

*Cincom Sys., Inc. v. United States*, 37 Fed.Cl. 266 (1997) ..... 15

*Corel Corp. v. United States*, 165 F.Supp.2d 12 (D.D.C. 2001) ..... 9

*Cubic Applications, Inc. v. United States*, 37 Fed.Cl. 339 (1997 ..... 11

*CW Gov't Travel, Inc. v. United States,* 61 Fed. Cl. 559 (2004), *aff'd,* 163 Fed.Appx. 853 (2005) ..... 10

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) ..... 11

*Ezenia!, Inc. v. United States*, 80 Fed.Cl. 60 (2008) ..... 3, 4

*Fil-Coil Company, Inc.*, B-231768, Oct. 18, 1988, 88-2 CPD ¶ 362 ..... 11

*FMC Corp. v. United States*, 3 F.3d 424 (Fed. Cir. 1993) ..... 13

*Meyers Investigative & Security Servs., Inc. v. United States,* 275 F.3d 1366 (Fed. Cir. 2002) ..... 10

*Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443 (2001) ..... 10

*OTI America, Inc. v. United States,* 68 Fed. Cl. 108 (2005) ..... 2, 6-7, 9

*Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728 (2000) ..... 14

*PGBA LLC v. United States*, 57 Fed.Cl. 655 (2003) ..... 14

*Superior Helicopter LLC v. United States*, 78 Fed.Cl. 181 (2007) ..........14

**STATUTES AND REGULATIONS**

10 U.S.C. § 2304c(a)(2) ..........3

28 U.S.C. § 1491(b)(1) ..........2, 3

41 U.S.C. § 253(c)(1) ..........9, 11

41 U.S.C. § 403 ..........6

41 U.S.C. §§ 405 ..........6

41 U.S.C. §§ 405a..........6

FAR 6.301(d) ..........12

FAR 6.302-1 ..........8

FAR 6.302-1(c)..........8, 9

FAR 6.303 ..........8

FAR 6.303(a)(1)-(2) ..........8

FAR 6.303(b) ..........8

FAR 6.304..........8

FAR 11.105(a)..........4, 7

FAR 11.105(a)(2)(i) ..........8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| **Savantage Financial Services, Inc.,** | ) | **Public Version** |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 1:08-cv-21** |
| | ) | **(Judge Futey)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff Savantage Financial Services, Inc. ("Savantage") hereby submits its opposition to Defendant's Motion To Dismiss Or, In The Alternative, For Judgment Upon The Administrative Record ("Defendant's Motion") and its reply to Defendant's Opposition To Plaintiff's Motion For Judgment Upon The Administrative Record ("Plaintiff's Motion"). As we shall demonstrate, this Court unquestionably has jurisdiction to decide this case and Plaintiff has standing to contest the Department of Homeland Security's ("DHS") non-competitive selection of the Oracle and SAP financial management software systems, to the exclusion of Savantage's Federal Financial Management System ("FFMS"). Indeed, were the Court to agree with Defendant's position that "[p]roduct choice is all that is at issue in this bid protest, and it is beyond the reach of this Court" (Defendant's Motion, p. 24), then the Court would be eviscerating the Competition in Contracting Act ("CICA") because every acquisition of supplies represents an agency's "product choice." If competitive procedures are not required for "product choices," then all agencies could merely select their preferred products and procure

them under a non-protestable task order. Such a result would clearly undermine Congress's intent to mandate competition except under very limited circumstances, as well as countless court decisions upholding CICA's competition requirements.

Before addressing the substance of Defendant's Motion, however, we must respond to Defendant's criticisms in Defendant's Statement of Facts. Defendant took Plaintiff to task for failing to file a separate statement of facts with Plaintiff's Motion and for relying upon evidence attached to Plaintiff's pleadings but not included in the Administrative Record ("AR"). With regard to the first issue, Plaintiff incorporated its statement of facts into its supporting memorandum as this Court has stated is compliant with RCFC 52.1(b), which replaced RCFC 56.1. *OTI America, Inc. v. United States*, 73 Fed.Cl. 758, 766 fn. 19 (2006). With respect to the second issue, Plaintiff filed a Motion to Supplement the Administrative Record with the Court on Wednesday, February 27, 2008.

In its Motion, Defendant has focused its arguments primarily on jurisdictional and standing issues, and on the reasonableness of DHS's acquisition of support services as a task order under the existing EAGLE IDIQ contract vehicle. These misguided arguments will be addressed in turn.

## I. THE COURT HAS JURISDICTION TO DECIDE THIS CASE AND PLAINTIFF HAS STANDING

Defendant contends that the Court lacks jurisdiction on the grounds that (1) DHS's non-competitive selection of the Oracle and SAP financial management software systems was a "standardization decision" or "product choice" that does not constitute a procurement within the meaning of the term as used in the Tucker Act, 28 U.S.C. § 1491(b)(1); and (2) the TASC solicitation for the selection of a support services contractor to migrate the Oracle system to those DHS components currently using Savantage's FFMS will result in a task order under the existing EAGLE IDIQ contract and, as such, is not protestable under the Federal Acquisition

Streamlining Act ("FASA"), citing 10 U.S.C. § 2304c(a)(2). In support of the first ground, Defendant relies exclusively on this Court's recent decision in *Ezenia!, Inc. v. United States*, 80 Fed.Cl. 60 (2008), however, there exist fatal flaws in Defendant's position. As to the second ground, while Plaintiff does not dispute that the TASC solicitation will result in a non-protestable task order, this case concerns Plaintiff's protest against DHS's brand name justification as a violation of statute and applicable regulations in connection with the TASC solicitation, which will implement DHS's improper actions. If the Court grants Plaintiff's Motion, the TASC solicitation will be rendered moot and ineffective until such time as DHS makes a legal selection of a financial management software system for agency-wide use as a result of a competitive procurement.

A. DHS's Brand Name Justification Is Reviewable By This Court

Under the Tucker Act, this Court has jurisdiction over (i) actions objecting to a solicitation for bids or proposals for a proposed contract or to a proposed award of a contract (*i.e.*, a pre-award protest), (ii) actions objecting to the award of a contract (*i.e.*, a post-award protest), or (iii) actions "objecting to any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Advanced Systems Technology, Inc. v. United States*, 69 Fed.Cl. 474, 482 (2006). It is the third prong that gives the Court jurisdiction over this action.

Relying on revisionist history, Defendant asserts that the only procurement involved here is the non-protestable TASC solicitation and that DHS made a "standardization decision" or "product choice" when it selected the Oracle and SAP financial management software systems. Defendant then argues that the ruling in *Ezenia!* deprives the Court of jurisdiction over Plaintiff's case because the alleged "standardization decision" was not a procurement for purposes of the Tucker Act. The fact of the matter is, however, that DHS executed a "Brand

Name Justification" on July 26, 2007, citing Federal Acquisition Regulation ("FAR") 11.105(a), "Items peculiar to one manufacturer," and relying upon supporting data (*i.e.*, the accompanying Business Case, Alternatives Analysis, and other documents) certified as complete and accurate by the Director of DHS's Resource Management Transformation Office. AR, Tab 13. It was not a "standardization decision" – in fact the terms "standardization" and "standardize" are nowhere to be found in the AR – and it was not entitled a "product choice" decision, which is simply a term Defendant latched onto because it was used in *Ezenia!* Now that DHS's brand name justification has been challenged by Savantage, Defendant cannot rewrite the record in an effort to fit this case into the *Ezenia!* mold.

Even if the Court were to believe that the brand name justification in this case is comparable to a "standardization decision" as discussed in *Ezenia!*, that decision is nonetheless inapposite. As explained by the Court in *Ezenia!*, the Army used a "Best of Breed" evaluation and "the Army made a decision <u>through a competitive process</u> to select the Adobe product, a product best suited to fulfill its needs." 80 Fed. Cl. at 63 (emphasis added). The Court further stated:

> At the time of this procurement Ezenia's software was not fully interoperable with the Adobe software. If Ezenia wishes to contest the decision to procure only Adobe software, it must challenge the overall policy mandating the use of only Adobe products, and that challenge would only be proper in this Court if the Army had chosen to standardize its software with the actual intention of knocking out other parties, for a sole-source procurement. *See Fire-Trol Holdings, LLC v. United States*, 68 Fed.Cl. 281 (2005). Here, however, the standardization decision was not a procurement decision, and thus it would not fall within this Court's bid protest jurisdiction.

*Id*.

In sharp contrast, DHS did not conduct any competitive process for purposes of selecting a financial management software system. Moreover, the brand name justification

process, which effectively mandates the use of only Oracle and SAP products, that it did pursue had the actual intention of knocking out other parties, including Savantage, for a sole-source procurement.[1] It is clear upon a close reading of the *Ezenia!* decision that the Army's "standardization decision" was in actuality its selection decision for standardizing to one software product as a result of a competitive procurement. That is not what occurred in this case. Instead, DHS secretly and without any competitive process chose its preferred financial management software system under the umbrella of a brand name justification, which utterly failed to comply with applicable regulations. *See* Plaintiff's Motion, pp. 19-23.

Further, Plaintiff disagrees with Defendant's position that all "standardization decisions" are not procurement decisions. First and foremost, while it may be perfectly reasonable for agencies to standardize[2] to a certain product, process, or the like, that does not mean that agencies have *carte blanche* to decide upon the selected item without the benefit of competition. Otherwise, the Navy could choose to buy only aircraft manufactured by Boeing, the Army could choose to buy only trucks manufactured by Ford, the GSA could choose to buy only computers manufactured by Dell, and so on – all under the guise of a "standardization decision" that on the basis of Defendant's premise could not be challenged by other aircraft, truck or computer manufacturers. Such a position would invalidate the carefully laid-out procedures in the FAR for acquiring supplies on a brand-name or sole-source basis, and allow agencies to easily circumvent CICA's competition requirements.

---

[1] As stated in Plaintiff's Motion (p. 16 fn. 3), DHS intends to ultimately use a single financial management software system, which will undoubtedly be the Oracle system. *See also* AR, Tab 13, pp. 775-76 (DHS testimony before Congress).

[2] The term "standardize" is defined as follows: "1. to bring to or make of an established standard size, weight, quality, strength, or the like: *to standardize manufactured parts*. 2. to compare with or test by a standard. 3. to choose to establish a standard for." Webster's Universal Unabridged Dictionary (Deluxe Edition, 1996), p. 1857. The term is not defined in the FAR.

Second, a decision to standardize to, and only buy, Boeing aircraft, Ford trucks, Dell computers, *etc*. clearly falls within the definition of the term "procurement" as set forth at 41 U.S.C. § 403 ("all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout").[3] *See* Plaintiff's Motion, pp. 13-16; *OTI America, Inc. v. United States*, 68 Fed.Cl. 108, 114 (2005). In this case, DHS's process for determining a need for one financial management software system was achieved through its brand name justification and there is no question that DHS has acquired, or will soon acquire, additional software licenses from Oracle.[4]

Lastly, Defendant's attempt to distinguish *OTI America* from the situation in this case is unavailing. *OTI America* involved several contractors, each with a contract to develop a new product, electronic passport covers, and then a "deselection" decision that precluded OTI America from further participation in the next stages of development. The Court held that the

---

[3] Title 41 of the U.S. Code covers "Public Contracts" and § 403 is in Chapter 7, "Office of Federal Procurement Policy." Although the requirements of CICA are found in Chapter 4 of Title 41, the definition is clearly applicable to Chapter 4, "Procurement Procedures." Chapter 7, §§ 405 and 405a, authorized the promulgation of a "single Government-wide procurement regulation" (*i.e.*, the FAR), which "shall be followed by executive agencies." Chapter 7, through the FAR, promulgated the definition from § 403 for application to all federal procurement. While not identical, the FAR definition of acquisition/procurement is in all relevant respects the same as Congress's definition in § 403. Plaintiff's Motion, p. 15 fn. 2.

[4] Defendant claims that the successful support services contractor will not purchase the Oracle software or software licenses. Defendant's Motion, p. 12. What Defendant fails to disclose to the Court, however, is that the TASC solicitation specifically states that "DHS will acquire the additional license keys needed for all of the appropriate applications to be installed in the environments described below." AR, Tab 4, p. 108; *see also* AR, Tab 13, p. 812 ([redacted] is precisely the methodology used by Savantage in estimating the direct cost to DHS of migrating the Oracle financial management applications software system to the six DHS components currently using Savantage's FFMS. Exhibit 1 to Plaintiff's Appendix, ¶¶ 4-6. Thus, it is disingenuous and evasive for Defendant to infer that there will be no acquisition of Oracle software and/or software licenses.

"deselection" decision was a procurement subject to the Court's jurisdiction under the third prong of § 1491(b)(1) of the Tucker Act. 68 Fed.Cl. at 117. Here, the situation is unique because DHS was established as a new government agency through the consolidation of previously-existing agencies, which had contractual relationships with five companies, including Savantage, Oracle and SAP, to provide financial management software systems. When DHS was created, the contractual relationships remained in place, a scenario that is comparable to the *OTI America* case where several contracts existed for the development of the electronic passport covers. When the government decided to no longer order samples from *OTI America*, just as DHS has decided to no longer use Savantage's FFMS after the migration effort is completed, that "deselection" decision was a procurement protestable in this Court. 68 Fed.Cl. at 114-17. Thus, contrary to Defendant's position, DHS's actions are subject to the Court's jurisdiction under the Tucker Act.

As the record makes clear, DHS selected the Oracle and SAP financial management software systems pursuant to a brand name justification, not a "standardization decision" or a "product choice" decision. While Defendant tries to distance itself from this fact, referring to it as a "[redacted]" (Defendant's Motion, p. 21), there is nothing [redacted] about the documents at Tab 13 of the AR. The document itself is titled "Brand Name Justification" ("Justification") and it cites FAR 11.105(a) as authority for its execution. AR, Tab 13, p. 746. FAR 11.105(a) provides an exception to the provision that "agency requirements shall not be written so as to require a particular brand-name, product, or a feature of a product, peculiar to one manufacturer, thereby precluding consideration of a product manufactured by another company." The exception invoked by DHS is where "the particular brand name, product, or feature is essential to the Government's requirements, and market research indicates other

companies' similar products, or products lacking the particular feature, do not meet, or cannot be modified to meet, the agency's needs." The Justification [redacted] where it states that "[[redacted]." AR, Tab 13, p. 747.

FAR 11.105(a)(2)(i) further requires, for purposes of invoking the exception, that "[t]he authority to contract without providing for full and open competition is supported by the required justifications and approvals (see 6.302-1)." FAR 6.302-1(c), "Application for brand name description," states *inter alia* that "[i]t shall be justified and approved in accordance with FAR 6.303 and 6.304," and the justification "should indicate that the use of such descriptions in the acquisition is essential to the Government's requirements, thereby precluding consideration of a product manufactured by another company." In this case, DHS [redacted]" DHS also [redacted] requirements of FAR 6.303 [redacted] in that the contracting officer issued the Justification in writing, [redacted]" AR, Tab 13, p. 747.

Defendant's attempt to separate the [redacted] Justification from the accompanying Business Case and Analysis of Alternatives documents, characterizing them as "[redacted]" (Defendant's Motion, p. 21), is disingenuous at best. First, DHS did not distinguish these documents, including them as one document under Tab 13 and identified

in the AR Index as the "Brand Name Justification." More importantly, the Business Case, Alternatives Analysis and other documents are clearly the "[redacted]."

Accordingly, the record establishes that DHS made its non-competitive selection of the Oracle and SAP financial management software systems utilizing the brand name justification exception to CICA's requirement for full and open competition, which exception is a sub-component of CICA's "one responsible source" exception. *See* 41 U.S.C. § 253(c)(1) and FAR 6.302-1(c)[5]. As explained at length in Plaintiff's Motion, however, DHS's Justification constitutes a sole-source procurement that is not legally sustainable. Plaintiff's Motion, pp. 13-19. Moreover, DHS's Justification was procedurally inadequate. Plaintiff's Motion, pp. 19-23. The Court clearly has jurisdiction over this action based on the third prong of § 1491(b)(1) of the Tucker Act. *E.g., OTI America, Inc. v. United States*, 68 Fed.Cl. 108 (2005); *CCL Inc. v. United States*, 39 Fed.Cl. 780 (1997); *ATA Defense Industries, Inc. v. United States*, 38 Fed.Cl. 489 (1997).

B. Plaintiff Has Standing To Bring This Action

The linchpin of Defendant's argument that Plaintiff lacks standing is its position that DHS's alleged "standardization decision" was not a procurement and, thus, that decision cannot be challenged in this Court. Defendant then contended that Plaintiff has no standing

[5] We note that Defendant has cited the decision of the U.S. District Court for the District of Columbia in *Corel Corp. v. United States*, 165 F.Supp.2d 12 (D.D.C. 2001), a case involving the Department of Labor's decision to standardize to the Microsoft Office Suite software in lieu of Corel's Office Suite software after consideration of price and technical information from both companies. Defendant's Motion, pp. 11, 14 and 15 fn. 3. Significantly, the Court discussed two exceptions to CICA's requirement for full and open competition: (1) the sole-source exception, specifically referring to an acquisition using a brand-name only requirement; and (2) the use of procurement procedures expressly authorized by statute. *Id*. at 19. In *Corel*, the agency utilized the "expressly authorized by statute" procedure, *i.e.*, issuance of a task order under a GSA Schedule contract and non-protestable under FASA. This case is completely different in that DHS employed the brand-name (sole-source) justification process for selecting the Oracle and SAP financial management software systems.

because it was not an actual or prospective offeror in response to the TASC solicitation. As demonstrated above, Defendant has missed the mark.

Because Savantage could compete on a procurement for a financial management software system to be used as the baseline for all DHS components, and it has an economic interest in such an acquisition, it has standing. *CCL, Inc., supra*, 39 Fed.Cl. at 790; *see also CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 570 (2004), *aff'd*, 163 Fed.Appx. 853 (2005); *Northrop Grumman Corp. v. United States*, 50 Fed.Cl. 443, 456 (2001); *ATA Defense Industries, supra*, 38 Fed.Cl. at 494-97. Moreover, Savantage has established prejudice as a result of DHS's non-competitive actions. Plaintiff's Motion, pp. 10-12; *see also Myers Investigative & Security Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed.Cir. 2002).

Plaintiff does not deny that it was not an actual or prospective offeror in response to the TASC solicitation; however, that fact is irrelevant to Plaintiff's standing to challenge DHS's non-competitive selection of the Oracle and SAP financial management software systems. As much as Defendant would like to have the Court ignore the true nature of this protest, the irrefutable fact is that Plaintiff is objecting to DHS's violation of statute and regulation "in connection with" the TASC solicitation, which will implement DHS's illegal and procedurally-deficient brand-name justification procedures.

## II. DHS'S ACTIONS WERE NOT LEGALLY JUSTIFIABLE AND ITS BRAND NAME JUSTIFICATION WAS ARBITRARY AND CAPRICIOUS

Defendant studiously avoided Plaintiff's arguments that DHS's Justification constituted an illegal sole-source procurement, was procedurally deficient, and was arbitrary and capricious. Plaintiff's Motion, pp. 13-33. Significantly, Defendant made no attempt to rebut Plaintiff's arguments and evidence that DHS's Justification does not comport with the requirements for a legally-permissible sole-source procurement and that the Savantage FFMS fully satisfies all of

DHS's minimum needs.[6] Instead, Defendant made meaningless arguments – in the context of this particular protest – that DHS's decision to procure software development and integration support services via a task order issued under the EAGLE IDIQ contracts was not arbitrary and capricious. Again, Defendant has missed the mark because Plaintiff does not contend that acquiring support services under the EAGLE IDIQ contracts is unreasonable.

As explained in Plaintiff's Motion, the Oracle and SAP financial management software systems are not the only systems qualified to meet DHS's requirements. Plaintiff's Motion, pp. 15-19; *Aero Corporation v. Department of the Navy*, 540 F. Supp. 180 (D.D.C. 1980). Indeed, the broadly-worded "criteria" or "benefits" outlined in the Justification (AR, Tab 13, p. 747) are equally applicable to the Savantage FFMS. Plaintiff's Motion, pp. 24-32 and Exhibit A thereto. Thus, the non-competitive selection of the Oracle and SAP systems does not meet the threshold requirement of the CICA exception invoked by DHS, *i.e.*, "the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency." 41 U.S.C. § 253(c)(1).[7] Moreover, it is not sufficient, for purposes of invoking this exception, that the Oracle and SAP systems are deemed superior to, or more preferable than, the Savantage FFMS.

[6] Presumably, Defendant ignored Plaintiff's evidence on the ground that Savantage's declarations and other documents are not yet part of the AR. As stated earlier, Plaintiff has submitted a Motion to Supplement the Administrative Record. Although not cited in the Motion, the Court's decision in *CCL* regarding supplementation of the record is particularly apt. *CCL Inc., supra*, 39 Fed.Cl. at 790-91 ("The court observes that the exception [to limiting review to the administrative record] especially pertinent here, however, is that the government is being sued for inaction—failing to use the competitive process. *See id*. [*Cubic Applications, Inc. v. United States*, 37 Fed.Cl. 339, 342 (1997), citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)] (noting that extra-record evidence may be considered "in cases where agencies are sued for a failure to take action")").

[7] *Compare* the facts in this case to those addressed in *Automation Engineering, Inc.*, B-239782 *et al.*, Sept. 20, 1990, 90-2 CPD ¶ 240, *Fil-Coil Company, Inc.*, B-231768, Oct. 18, 1988, 88-2 CPD ¶ 362, and *Berkey Marketing Companies*, B-224481, B-224489, Nov. 20, 1986, 86-2 CPD ¶ 596. In each of those decisions, the agency followed proper procedures in utilizing the brand name justification for a sole-source procurement and established that the products in question were available from only one responsible source and no other supplies would satisfy the agency's requirements.

*Aero Corporation*, *supra*, 540 F. Supp. at 208; *see also* FAR 6.301(d) ("When not providing for full and open competition, the contracting officer shall solicit offers from as many potential sources as is practicable under the circumstances.").

DHS's failure to comply with CICA's competition requirements, and its patent inability to satisfy the "one responsible source" exception in CICA and applicable FAR provisions, afford the Court ample grounds for granting Plaintiff's Motion and requests for injunctive and declaratory relief. As the Court stated in *CCL*:

> The court is to review agency action to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. These inquiries are in the alternative. The agency's application of the law is not viewed through the prism of one of the other inquiries. The agency's action was either lawful or not. If the action was prejudicially unlawful, it does not matter that the agency's perception that its conduct was lawful is reasonable. Hopefully an agency would always act pursuant to reasonable views of what the law permits.

39 Fed.Cl. at 791 (holding that contract modification exceeded scope of government's original contract with other contractor for installation and maintenance of computers at six sites, thus violating CICA). Similarly, it does not matter that DHS may perceive that its methodology for consolidating to a single financial management software system is reasonable and lawful when the facts clearly establish that the means by which DHS selected the Oracle and SAP systems were prejudicially unlawful.

Although, as in *CCL*, the Court's inquiry can and should end here, Plaintiff has also demonstrated – without any rebuttal from Defendant whatsoever – that DHS's Justification and supporting data were arbitrary and capricious. Plaintiff has shown that every characteristic, feature, benefit, and desirable aspect noted in the Justification documents with respect to the Oracle and SAP systems are equally applicable to Savantage's FFMS. Plaintiff's Motion, pp. 24-32 and Exhibit A thereto, and Exhibit 1 to Plaintiff's Appendix. Plaintiff has

also rebutted the few negative comments made in the Justification documents about Savantage's FFMS. Plaintiff's Motion, pp. 29-31.[8]

In sum, Defendant has failed to counter Plaintiff's proof that the Justification was contrary to law or that DHS's rationale in support of the Justification was arbitrary and capricious.

## III. PLAINTIFF HAS SATISFIED THE REQUIREMENTS FOR INJUNCTIVE AND DECLARATORY RELIEF

In its Complaint, Plaintiff sought both injunctive and declaratory relief, and Plaintiff fully described its entitlement to injunctive relief in its Legal Memorandum supporting its request for injunctive relief. The standard for injunctive relief is well-established. A plaintiff must demonstrate: (i) plaintiff's likelihood of success on the merits; (ii) irreparable injury to plaintiff if defendant is not enjoined; (iii) that the harm to plaintiff outweighs the harm to defendant; and (iv) that the public interest is served by enjoining defendant. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Regarding plaintiffs' requests for equitable relief, this Court recently stated:

> The Federal Circuit, however, has explained that if a declaratory judgment and an injunction would have the same practical effect in a case, consideration of declaratory relief under injunctive relief standards is appropriate. *See PGBA*, 389 F.3d at 1228 (by declaratory judgment, plaintiff "is asking to have the award set aside, which is coercive and has the same practical effect as an injunction;" thus, trial court's analysis under injunctive relief standard was correct); *see also Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) ("Ordinarily . . . the practical effect of [a declaratory judgment and an injunction] will

[8] Because Defendant marked the Justification documents as protected under the Court's Protective Order, and the Court denied Plaintiff's motion to remove that designation, Savantage officials were precluded from seeing and refuting the [redacted] to the five existing systems set forth in the Business Case. AR, Tab 13, pp. 760-62. Were Savantage officials permitted to see the [redacted]" data, we have no doubt that Plaintiff would be able to refute any negative conclusions or perceptions about the FFMS that may be derived from that data.

> be virtually identical."). Given that plaintiffs' requested relief – set-aside of the Forest Service's override – is, with one exception, identical whether in the form of a declaratory judgment or an injunction, the court will apply the four-factor test for injunctive relief. *See PGBA*, 389 F.3d at 1228-29.

*Superior Helicopter LLC v. United States*, 78 Fed.Cl. 181, 194 (2007) (finding plaintiffs satisfied all four factors for injunctive relief, court issued a declaratory judgment setting aside the Forest Service's override of the automatic stay).

In this case, Plaintiff has demonstrated that it is likely to succeed on the merits, as described above and in Plaintiff's Motion. Without equitable relief, Plaintiff will be permanently deprived of the opportunity to compete for business that it would seek and that currently represents approximately one-half of its annual revenues. *See* Exhibit 1, ¶¶ 7 and 18, of Plaintiff's Appendix. The loss of this opportunity is not compensable by money damages because there is no meaningful way to measure the value of such a loss. Plaintiff has therefore demonstrated that it will suffer irreparable harm if the requested relief is not granted. *E.g., PGBA LLC v. United States*, 57 Fed.Cl. 655, 664 (2003); *Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 744 (2000).

The balance of hardships clearly weighs in Plaintiff's favor. While DHS may be inconvenienced by the delay resulting from an injunction, its components will continue to operate using the current functioning and certified financial management software systems. On the other hand, Savantage, a small woman-owned business, could conceivably lose a very large part of its overall current and future business.

Finally, the public interest is served by granting the requested relief. As this Court has stated, "[t]he public interest will be served by preserving the Court's ability to fashion relief should it ultimately determine an illegality occurred. There is an overriding public interest in preserving the integrity of the procurement process." *Advanced Systems Technology, Inc. v.*

*United States*, 69 Fed.Cl. 474, 486 (2006); *Cincom Sys., Inc. v. United States*, 37 Fed.Cl. 266, 269 (1997). In addition, as a matter of public policy, it would set a dangerous precedent if the Court were to accept Defendant's premise that DHS's Justification is nothing more than a "standardization decision" or "product choice" shielded from any scrutiny by the Court. As we have stated, Defendant's position has the effect of substantially gutting CICA's competition requirements as well as the regulatory framework for brand name justifications.

## IV. CONCLUSION

For the reasons stated above and in Plaintiff's prior submissions, the Court should grant Plaintiff's request for equitable relief with an order setting aside DHS's non-competitive selection of the Oracle and SAP financial management software systems and directing DHS to conduct a competitive procurement for the selection of a financial management software system should DHS determine to obtain one such software system for use across all of DHS's components.

Respectfully submitted,

s/ Timothy Sullivan

Timothy Sullivan
1909 K Street, N.W., 6th Floor
Washington, D.C. 20006
(202) 585-6930 (tel.)
(202) 508-1028 (fax)

Attorney of Record for Plaintiff Savantage Financial Services, Inc.

Of Counsel:

Katherine S. Nucci
Thompson Coburn LLP
1909 K Street, N.W., 6th Floor
Washington, D.C. 20006
(202) 585-6900 (tel.)
(202) 585-6969 (fax)

Dated: February 29, 2008

CERTIFICATE OF FILING

I hereby certify that on the 29th day of February 2008, a copy of "Plaintiff's Opposition To Defendant's Motion To Dismiss And Reply To Defendant's Opposition To Plaintiff's Motion For Judgment Upon The Administrative Record" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Timothy Sullivan