AGREED-UPON REDACTED COPY--MAY BE MADE PUBLIC

No. 08-21
(JUDGE FUTEY)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SAVANTAGE FINANCIAL SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

JEFFREY S. BUCKHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

February 22, 2008

Attorneys for Defendant

154-08-21.02

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. Savantage Has Failed To Identify An Actionable Solicitation Or Procurement Action Within This Court's Bid Protest Jurisdiction . . . . . . . . . . . 9

A. DHS's Decision To Standardize Its Software Is Not Within This Court's Bid Protest Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.\ Task Orders Placed Under IDIQ Contracts Are Outside This Court's Bid Protest Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. Savantage Lacks Standing To Challenge The Award Of A Task Order Under The Eagle Contract Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV. The Government's Procurement Of Software Development And Integration Support Services Is Not Arbitrary Or Capricious . . . . . . . . . . . . . . . . . 19

A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B. DHS's Procurement Of Software Development And Integration Services Through A Task Order Issued Under An Existing Contract Vehicle Is Not Arbitrary And Capricious . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### CASES

ABF Freight Sys., Inc. v. United States,
55 Fed. Cl. 392 (2003) .......... 22

Alaska Pulp Corp. v. United States,
38 Fed. Cl. 141 (1997) .......... 8

Amer. Tel. & Tel. Co. v. United States,
307 F.3d 1374 (Fed. Cir. 2002) .......... 22

American Fed'n of Gov't Employees v. United States,
258 F.3d 1294 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002) .......... 16

Awad v. United States,
61 Fed. Cl. 281 (2004) .......... 8

Banknote Corp. of America, Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) .......... 16

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) .......... 20

Bender v. Williamsport Area Sch. Dist.,
475 U.S. 534 (1986) .......... 8

Beta Analytics Int'l, Inc. v. United States,
44 Fed. Cl. 131 (1999) .......... 18

CACI, Inc. v. United States,
719 F.2d 1567 (Fed. Cir. 1983) .......... 18, 20

CCL, Inc. v. United States,
39 Fed. Cl. 780 (1997) .......... 16

CCL Serv. Corp. v. United States,
48 Fed. Cl. 113 (2000) .......... 20

CW Gov't Travel, Inc. v. United States,

61 Fed. Cl. 559 (2004) .................................................. 16

California v. LaRue,
409 U.S. 109 (1972) .................................................. 8

Camp v. Pitts,
411 U.S. 138 (1973) .................................................. 19

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) .................................................. 15

Cent. Arkansas Maint., Inc. v. United States,
68 F.3d 1338 (Fed. Cir. 1995) .................................................. 18

Cincom Sys., Inc. v. United States,
37 Fed. Cl. 663 (1997) .................................................. 18, 19, 20

Corel Corp. v. United States,
165 F. Supp. 2d 12 (D.D.C. 2001) .................................................. 11, 14, 15

Data Mgmt. Servs. Joint Venture, v. United States et. al.,
78 Fed. Cl. 366 (2007) .................................................. 13

Ezenia!, Inc. v. United States,
80 Fed Cl. 60 (2008) .................................................. passim

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993) .................................................. 20

Filtration Dev. Co. v. United States,
59 Fed. Cl. 658 (2004) .................................................. 20

Matter Of Global Computer Enters., Inc.,
No. B-310823, B-310823.2, B-310823.4, 2008 WL 314520 (Comp. Gen. Jan. 31, 2008) .................................................. 13

Information Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003) .................................................. 15

Keco Indus., Inc. v. United States,
492 F.2d 1200 (Ct. Cl. 1974) .................................................. 19

Myers Investigative & Security Servs., Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) ..... 15

Northrup Grumman Corp. v. United States,
50 Fed. Cl. 443 (2001) ..... 8, 16

OTI America, Inc. v. United States,
68 Fed. Cl. 108 (2005) ..... 11

Overstreet Elec. Co., Inc. v. United States,
47 Fed. Cl. 728 (2000) ..... 19

Rex Serv. Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006) ..... 15, 16

Scott v. United States,
78 Fed. Cl. 151 (2007) ..... 22

Sicom Sys., Ltd. v. Agilent Tech.,
427 F.3d 971 (Fed. Cir. 2005) ..... 15

Steel Co. v. Citizens for a Better Environ.,
523 U.S. 93 (1998) ..... 8

Tech Sys., Inc. v. United States,
50 Fed. Cl. 216 (2001) ..... 18, 19

Wackenhut Int'l., Inc. v. United States,
40 Fed. Cl. 93 (1998) ..... 18

Winstar Commc'ns., Inc. v. United States,
41 Fed. Cl. 748 (1998) ..... 19

**STATUTES AND REGULATIONS**

5 U.S.C. § 706 ..... 18

10 U.S.C § 2304c ..... 14

28 U.S.C. § 1491(b)(1) ..... 16, 18

28 U.S.C. § 1491(b)(1) .......... 9

Competition in Contracting Act (CICA), 41 U.S.C. § 253 .......... 11, 12

41 U.S.C. § 253j(d) .......... 13, 14, 20, 22

FAR § 1.102 .......... 22

FAR § 1.102-4 .......... 22

FAR § 1.602 .......... 22

FAR § 5.102 .......... 11

FAR § 6.302-1 .......... 11

FAR § 6.303-1 .......... 11

FAR § 6.304 .......... 11

FAR § 6.305 .......... 11

FAR § 7.102 .......... 11

FAR § 7.105 .......... 11

FAR § 8.405.6 .......... 11

FAR § 16.101 .......... 22

FAR § 16.5 .......... 22

AGREED-UPON REDACTED COPY--MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| SAVANTAGE FINANCIAL SERVICES, INC., Plaintiff, | ) | |
| v. | ) | No. 08-21 |
| THE UNITED STATES, Defendant. | ) | (Judge Futey) |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff's bid protest complaint for lack of jurisdiction upon the grounds that plaintiff fails to identify a procurement action within this Court's limited bid protest jurisdiction, and because plaintiff is not an interested party with standing to bring this alleged bid protest action. In the alternative, pursuant to RCFC 56.1, the United States respectfully moves for judgment upon the administrative record.

In support of our motion and opposition we rely upon the administrative record, this brief, and the accompanying statement of facts.

**STATEMENT OF THE ISSUES**

1. Whether the protest brought by plaintiff, Savantage Financial Services, Inc. ("Savantage"), should be dismissed for want of subject-matter jurisdiction in light of the fact that

AGREED-UPON REDACTED COPY--MAY BE MADE PUBLIC

Savantage has failed to identify a procurement action within this Court's bid protest jurisdiction and is not an interested party with standing to bring this action.

2. Whether DHS's procurement of software development and integration support services through a task order issued under an existing contracting vehicle was arbitrary and capricious.

## STATEMENT OF THE CASE

### I. Nature of the Case

This is a bid protest that purports to challenge "the issuance of US Department of Homeland Security . . . Request for Quotation . . . HSHQDC-08-Q-0018 . . . ." Complaint ¶ 1. The RFQ at issue contemplates the use and award of a Task Order for software development and integration support for Transformation and Systems Consolidation ("TASC") efforts under the Department of Homeland Security's ("DHS") Enterprise Acquisition and Leading Edge Solutions ("EAGLE") Contract Program under Functional Category 4, Software Development. The EAGLE program is comprised of fifty-three, competitively procured IDIQ contracts, within five functional categories, and is specifically designed as the preferred source of Information Technology (IT) services for the majority of the Department's enterprise initiatives.

The software development and integration support services sought from eligible EAGLE vendors under RFQ HSHQDC-08-Q-0018 are in furtherance of DHS's business decision, in the wake of a congressional finding that DHS should consolidate its financial management operations, to leverage the different softwares currently in use within the agency and ultimately to standardize to Oracle and SAP, two shared baselines already in use in some parts of DHS. By

its plain terms, RFQ HSHQDC-08-Q-0018 does not, however, contemplate the purchase of any Oracle or SAP software by the successful EAGLE offeror.

Notwithstanding the fact that the instant RFQ seeks nothing more than services, plaintiff Savantage, a current provider of financial services application software to some parts of DHS, seeks to exploit the RFQ existence as a vehicle to complain to this Court about perceived defects in DHS's related business decision to standardize its software to Oracle and SAP. The Court of Federal Claims, however, has absolutely no jurisdiction over this matter. Not only is it the case that this Court has specifically ruled that agency standardization decisions are not procurement decisions within its jurisdiction, but task orders placed under IDIQ contracts are not protestable absent three narrow exceptions that plaintiff does not meet, and, indeed, does not even allude to in its complaint. Moreover, even if plaintiff were able to point to some procurement decision within this Court's jurisdiction, it is clear that it would not have standing to make a claim, because Savantage was not an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the task order at issue in this case. Indeed, Savantage did not submit a bid in connection with RFQ HSHQDC-08-Q-0018, nor did it participate in any way in the procurement at issue. As such, Savantage's complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim, and its motion for judgment on the administrative record should be denied.

## II. Statement Of Facts

DHS was created by a merger of 22 separate agencies from across the Federal Government for a joint mission support in securing the safety of the United States. AR774. One

of the challenges for the young Department was, and continues to be, the consolidation of multiple administrative systems within the component agencies. AR74. In fact, Public Law 108-330, dated October 16, 2004, specifically refers to the fact that a strong Chief Financial Officer is needed within the Department "both to consolidate financial management operations, and to insure that management control systems are comprehensively designed to achieve the mission and execute the strategy of the Department."

DHS's path has not been a smooth one, to include the eMerge[2] project, which resulted in the expenditure of millions of dollars in a failed attempt to integrate the Department's financial systems. AR783. However, as a result of the Department's efforts to date, DHS has consolidated decentralized, distinct financial systems from twenty-two agencies [redacted] and is now moving to consolidate to two integrated systems. AR782. The Department's actions are consistent with recommendations made by GAO to strengthen DHS's financial management. AR777. In addition, DHS has briefed and continues to brief the Office of Management and Budget with respect to its transformation and systems consolidation efforts. AR775. The rationale reflecting the consolidation decision and the reasons underlying it is clearly documented, and appears in the instant administrative record in the Business Case for TASC. AR 749 et seq.

The Department is migrating the various financial systems in increments, building on the lessons learned during each migration. AR105. The TASC procurement requires the successful offeror to first perform assessments for migration efforts needed to transition components onto the TASC baseline. AR106-07. The offeror will then formulate a comprehensive

implementation plan for additional DSH components, building on lessons learned during the migration of each component. A105-07.

After a costly and unsuccessful attempt to consolidate the financial systems under the eMerge[2] effort, the Department decided in accordance with [redacted] to seek prospective offerors from its Enterprise Acquisition Gateway for Leading-Edge Solutions (EAGLE) Indefinite Delivery/Indefinite Quantity (IDIQ) contracts, prime contractors to meet the Department's needs. AR809. The EAGLE program is comprised of fifty-three IDIQ contracts, within five functional categories, and is specifically designed as the preferred source of Information Technology (IT) services for the majority of the Department's enterprise initiatives. AR969, AR976, AR1048. EAGLE was a competitive procurement. Indeed, Savantage competed to become an EAGLE Vendor in categories 3 and 4, and was not selected. See AR942 et seq.

[redacted] it issued the RFQ at issue to contractors already qualified as prime contractors under the Department's EAGLE program. A78. Specifically, the Department is competing the TASC acquisition in a functional category that has twenty contractors, seven of which are small businesses. AR78, AR969. [redacted] Under the EAGLE contracts, the vendors

have a "fair opportunity" to compete for the task orders under the applicable functional category. See FAR § 16.505(b).

Under the EAGLE program, all businesses, to include small businesses, that are not EAGLE prime contractors, can become teaming partners with an EAGLE prime contractor in response to a specific requirement, such as TASC, or as a general team member through the subcontractor process. AR1011. Consequently, any firm in this market can participate in the TASC acquisition as a teaming partner or as a subcontractor. DHS publishes information on the EAGLE program and its subcontracting opportunities on its website at **www.dhs.gov** under the heading "Open for Business." In other words, EAGLE is a widely publicized program and any vendor can obtain information 24 hours a day.

RFQ HSHQDC-08-Q-0018 describes the services to be provided under the contemplated EAGLE task order as follows:

> This task order will require a contractor (Solutions Architect) to: 1) Stand up the TASC Oracle Baseline in a DHS provided hosted facility; 2) Re-host [the Transportation Security Administration] and [Domestic Nuclear Detention Office] onto the TASC Oracle Baseline; 3) Design Interfaces between the TASC Oracle Baseline and DHS Enterprise Applications; 4) Develop Interfaces between the TASC Oracle Baseline and DHS Enterprise Applications[;] 5) Assess and Migrate selected Components onto the TASC Oracle Baseline; 6) Migrate TSA onto the Enterprise instances of PRISM (EPI) and Sunflower (SAMS)[;] and 7) Provide continuing operations, maintenance and enhancements for the TASC Oracle Baseline.

AR106-07.

Although several specific name brands of software are mentioned in the solicitation, the TASC procurement does not require the contractor to provide any specific software applications. Rather, the procurement requires the successful offeror to support database and software development, provide integration services as well as operation and maintenance (O&M) of software currently included in the Oracle Baseline. A106-07. Indeed, the Department could not adequately communicate its requirements without making reference to the software applications since they are the installed base of software. To reiterate, the Department is not acquiring brand name specific software under this procurement, but rather is acquiring services to support the software that is currently in use.

Savantage did not submit a bid in response to RFQ HSHQDC-08-Q-0018. See Complaint. Indeed, it could not have, because it is not an EAGLE vendor. Savantage also failed to participate in this procurement action by not electing to team with or become a subcontractor to an EAGLE prime contractor that was submitting a quote. See Complaint. Instead, Savantage filed the instant bid protest–not to address any perceived flaw in the DHS solicitation for software development and integration support services–but rather to complain that "it is Savantage's financial services applications software that DHS has proposed to replace without any sort of competitive process." Pl.'s Mot. For J. on Admin. Record at 11 [hereinafter "Pl.'s Mot."]. However, for reasons set forth in detail below, this is not an issue that is properly before the Court.

AGREED-UPON REDACTED COPY--MAY BE MADE PUBLIC

## ARGUMENT

### I. Legal Standards

Pursuant to RCFC 12(b)(1) and 12(b)(6), the Court is required to grant Defendant's motion to dismiss if it finds that it does not have jurisdiction over Plaintiff's claim or that Plaintiff has failed to state a claim upon which relief can be granted. Awad v. United States, 61 Fed. Cl. 281, 283 (2004). Subject matter jurisdiction may be questioned at any time, e.g., Triax Co. v. United States, 20 Ct. Cl. 507, 509 (1990) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) and California v. LaRue, 409 U.S. 109, 113 n.3 (1972)), and is a threshold matter that must be addressed before the merits of an action are considered. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 93, 94-95 (1998). To withstand a Rule 12(b)(1) motion to dismiss for lack of jurisdiction where, as in this case, the defendant challenges jurisdiction, the plaintiff must prove the allegations supporting jurisdiction by a preponderance of the evidence. Alaska Pulp Corp. v. United States, 38 Fed. Cl. 141, 144 (1997). For the reasons set forth in detail below, this is a burden that Savantage fails to meet.

### II. Savantage Has Failed To Identify An Actionable Solicitation Or Procurement Action Within This Court's Bid Protest Jurisdiction

Savantage has brought a protest purportedly directed at "the issuance of US Department of Homeland Security . . . Request for Quotation . . . HSHQDC-08-Q-0018 . . . ." Compl. ¶ 1. Glossing over the facts that (1) the RFQ at issue would result in the issuance of a task order under an existing IDIQ contract, which would only be protestable under certain narrow statutory exceptions that Savantage does not invoke in its complaint, and that (2) Savantage did not

actually participate in any way in the bidding with respect to RFQ HSHQDC-08-Q-0018, Savantage takes the incredible step of urging this Court to look, not at RFQ HSHQDC-08-Q-0018, which pertains solely to the procurement of software development and integration support services, but at the merits of a related agency decision to standardize its software. For the reasons set forth in detail below, this Court's Tucker Act jurisdiction does not extend to Savantage's complaints.

### A. DHS's Decision To Standardize Its Software Is Not Within This Court's Bid Protest Jurisdiction

According to plaintiff, "[t]his action protests the issuance of US Department of Homeland Security . . . Request for Quotation . . . HSHQDC-08-Q-0018 . . . ." Compl. ¶ 1. Despite its invocation of RFQ HSHQDC-08-Q-0018, however, it is abundantly clear from Savantage's complaint and pleadings that what Savantage actually seeks to protest in this action is not truly DHS's RFQ or task order for software development and integration support services, but rather the agency's decision to standardize to two softwares that it already owns and uses. See Pl.'s Mot. at 13-19. DHS's adoption of Oracle or SAP as the planned software application that best meets its requirements, however, is not an action that is protestable within this Court's 28 U.S.C. § 1491(b)(1) jurisdiction.

This Court has recently and specifically ruled that agency standardization decisions are not procurement decisions within this Court's bid protest jurisdiction. Ezenia!, Inc. v. United States, 80 Fed Cl. 60, 63 (2008). Indeed, the facts of Ezenia are strikingly similar to the ones at bar. Faced by problems caused by the use of different types of software within the agency, the

Army conducted a "Best of Breed" comparison of available alternatives, and elected to standardize to Adobe software, as opposed to software provided by Ezenia or others. See id. at 61. When the Army attempted to order Adobe products, including through the vehicles of the Federal Supply Schedule and through an IDIQ, Ezenia filed a protest alleging "that three contracts were procured in violation of the proper statutory and regulatory guidelines for those awards." Id. at 61-62. It was immediately clear to the Court, however, that Ezenia was "essentially challenging the Army's 'Best of Breed' evaluation and standardization that resulted from it." Id. at 63.

In rejecting Ezenia's challenge, this Court reasoned that the fact that the Army had made a decision as to its needs and determined that one software over others met those needs did not mean that a procurement decision, much less a sole-source procurement, had occurred. See id. After all, the Court recognized, "[t]he bid protest mechanism has been put in place to protect the integrity of competition, not for the protection of product choice." Id. at 65 (emphasis supplied). A product choice–albeit a product choice that Savantage does not like–is all that has been made in this case. DHS, like the Army in Ezenia, has not standardized its software to Oracle and SAP with the actual intention of knocking any party in particular out for a sole-source procurement. See id. at 63. Indeed, if Savantage can supply Oracle and SAP software, Savantage may ultimately supply Oracle and SAP software to DHS, if and when an actual procurement of such software occurs in the future under a contract vehicle that would allow Savantage to submit a

bid.[1] As it is, however, the agency's decision to standardize to Oracle and SAP is not a procurement decision, and may not be reached through this Court's Tucker Act jurisdiction.

It also bears noting that because plaintiff is actually seeking to protest nothing more than DHS's product choice, it does not state a cause of action under the Competition in Contracting Act (CICA), 41 U.S.C. § 253, or for a violation of FAR §§ 5.102(a)(6), 6.302-1(c), 6.303-1, 6.304, 6.305, 7.102, 7.105, and 8.405.6. See Complaint ¶¶ 16-20. CICA "has no application to government decisions which do not involve the actual purchase of a good or service . . . ." Corel, 165 F. Supp. at 24 (emphasis supplied); see also discussion infra n.2, and certainly no actual purchase of software is yet at issue here. In a similar vein, by their own plain terms, FAR §§ 5.102(a)(6), 6.302-1(c), 6.303-1, 6.304, 6.305, 7.102, 7.105, and 8.405.6, see Complaint ¶¶ 18-20, regarding the sole source or brand name procurements, clearly have no applicability where no sole source or brand name procurement is occurring at the time of the protest and the protestor is merely challenging an agency's product choice.

Savantage fails to allege that DHS currently has purchased, or proposes to purchase through responses to RFQ HSHQDC-08-Q-0018 any actual software from any would-be

---

[1] It is for this reason that DHS's standardization decision is not, as plaintiff urges, comparable to the "deselection" decision that this Court found to constitute a procurement in OTI America, Inc. v. United States, 68 Fed. Cl. 108 (2005). See Pl.'s Mot. at 13-14. The issue in OTI America was that the agency had "entered into identical multi-award contracts that essentially involve[d] a competition in stages to develop a new product, and ultimately to procure that product, and the protest concern[ed] objections to the agency's actions in eliminating one of the competitors at an intermediate stage." OTI, 68 Fed. Cl. at 114 (emphasis supplied). In stark contrast, in this case, Savantage is not excluded as a competitor, and can freely compete to supply DHS with Oracle and SAP software.

Savantage competitors. See Complaint. Rather, Savantage's only purpose in filing the instant bid protest is to insure their continuing sole-source contract for their software support by disrupting nascent agency decisionmaking processes. This is quite contrary to the purpose for which this Court's limited Tucker Act jurisdiction, or Competition in Contracting Act, 41 U.S.C. § 253, was intended to be used. The only procurement actually before this Court pertains solely to software development and integration support services, and it does not require the successful awardee to provide or purchase any specific software applications. AR105-06.[2] Neither the agency's stated policy choices, nor its decision to discontinue the use of a particular product are within this Court's jurisdiction. Therefore, Savantage's bid protest should be dismissed.

B. **Task Orders Placed Under IDIQ Contracts Are Outside This Court's Bid Protest Jurisdiction**

Savantage's attempts to bootstrap its non-protestable claims into this Court's jurisdiction by reference to RFQ HSHQDC-08-Q-0018 are equally misplaced. By its plain terms, the RFQ at issue, is a "Task Order Request . . . being issued under the Department's . . . [EAGLE] Contract," AR78 (emphasis supplied), which is a preexisting IDIQ contract. A976. As a matter of statute, "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increase the scope, period, or

---

[redacted]

maximum value of the contract under which the order was issued." 41 U.S.C. § 253j(d) (emphasis supplied). For this reason, task orders placed under IDIQ contracts are generally outside the jurisdiction of this Court. Ezenia, 80 Fed. Cl. at 64; cf. also Matter Of Global Computer Enters., Inc., No. B-310823, B-310823.2, B-310823.4, 2008 WL 314520 (Comp. Gen. Jan. 31, 2008) ("Our Office is generally precluded from considering protests challenging the issuance of task or delivery orders under ID/IQ contracts.").

Subsection 253(a)(1) of Title 41 of the United States Code provides, in relevant part, that the requirements for full and open competition do not apply "in the case of procurement procedures otherwise expressly authorized by statute. . . ." Subsection (a)(2) of Section 2304c Title 10 of the United States reads:

> (a) Issuance of Orders-The following actions are not required for issuance of a task or delivery order under a task or delivery order contract:
>
> . . .
>
> (2) Except as provided in subsection (b), a competition (or a waiver of competition approved in accordance with section 2304(f) of this title) that is separate from that used for entering into the contract.

This particular provision was part of the Federal Acquisition Streamlining Act of 1994 (FASA), now codified in various sections of Title 10 and Title 41 of the U.S. Code, which "streamline[s] the government's acquisition of supplies and services was to prohibit protests on the issuance of task or delivery orders, except in limited circumstances." Data Mgmt. Servs. Joint Venture, v. United States et. al., 78 Fed. Cl. 366, 371 n.4 (2007). "In other words, once [a] task or delivery order contract itself has been obtained through full and open competition, orders made pursuant

to that contract are immune from CICA's full and open competition requirements. FASA also contains a non-reviewability clause which bars bid protests connected to orders placed under task or delivery order contracts. . . ." Corel Corp. v. United States, 165 F. Supp. 2d 12, 19-20 (D.D.C. 2001). It is beyond doubt that 10 U.S.C § 2304c controls the task order protested by Savantage, because the task order constitutes one of the "procurement procedures otherwise expressly authorized by statute." Indeed, there is also an existing umbrella IDIQ contract under which the task order in question will be issued.

As previously noted, "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increase the scope, period, or maximum value of the contract under which the order was issued." 41 U.S.C. § 253j(d) (emphasis supplied). In its motion for judgment on the administrative record in this case, Savantage completely ignores the existence of this statutory bar, and glosses over the fact that is does not make in its complaint even a single allegation implicating one of the exceptions that could legitimize its protest. See Complaint. Rather, Savantage appears to claim, as did the protestor in Ezenia, that because it alleges that the procedure leading to the issuance of the task order, i.e., the agency's business decision to standardize to Oracle and SAP, was somehow flawed, then 41 U.S.C. § 253j(d) does not bar its protest. There is absolutely no authority to support this contention. Indeed, this Court has found that protestors in Savantage's posture are statutorily precluded from bringing suit protesting the issuance of the task order, regardless of any claims that it might make that the procedure leading to the award was allegedly flawed in some way. See Ezenia, 80 Fed. Cl. at 64-65 ("Ezenia argues that if the procedure

leading to the award is flawed then the form of the award does not immunize that flawed procedure from review . . . . [T]he Court is not persuaded.").[3] Consequently, Savantage's bid protest complaint should be dismissed.

## III. Savantage Lacks Standing To Challenge The Award Of A Task Order Under The Eagle Contract Program

A protestor invoking the jurisdiction of this Court must establish its standing to do so. Myers Investigative & Security Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002); see also Sicom Sys., Ltd. v. Agilent Tech., 427 F.3d 971, 975 (Fed. Cir. 2005) ("Standing to sue is a threshold requirement in every federal action."). Standing is a matter of jurisdiction, which the plaintiff has the burden of demonstrating by a preponderance of the evidence. Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

To establish standing in a bid protest, the protestor must show that (1) it is an "interested party"; and (2) it has been substantially prejudiced by the alleged errors in the procurement process. Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed.

---

[3] It bears noting that, although the District Court for the District of Columbia takes a slightly different view toward agency standardization decisions, the result for a protestor in Savantage's position is the same. Specifically, and as discussed in greater detail below, the district court stated that a "decision to standardize to [a particular software] was not a procurement action governed by CICA. Regardless of whether the . . . decision to standardize to Microsoft is properly characterized as a 'procurement' decision to which CICA might apply, [the agency] subsequently elected to utilize procedures expressly authorized by FASA rather than engage in a full and open competition under CICA . . . ." Corel Corp., 165 F. Supp. 2d at 25. As a result, "CICA is inapplicable here because [the agency] procured its computer equipment pursuant to a different procurement statute which expressly authorizes the placement of orders under contracts previously awarded to another agency." Id.

Cir. 2003) (citing American Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002)). Although there is no statutory definition of "interested party" in 28 U.S.C. § 1491(b)(1), the statute conferring jurisdiction upon this Court to entertain bid protests, the term is defined in the case law as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Rex, 448 F.3d at 1307 (emphasis supplied); Banknote Corp. of America, Inc. v. United States, 365 F.3d 1345, 1351-52 (Fed. Cir. 2004). An "interested party" is not, therefore, merely a party that is "interested" in the bid protest in the dictionary sense of the word, nor a party who stands in the "zone of interests" affected by a procurement. See Amer. Fed. of Gov't Employees v. United States, 258 F.3d 1294, 1299-1302 (Fed. Cir. 2001).

There is no question that Savantage is not an actual or prospective bidder, or an offeror whose direct economic interest would be affected by the award of the task order associated with RFQ HSHQDC-08-Q-0018. Although Savantage makes much of the fact that "[i]t is Savantage's financial services application software that DHS has proposed to replace without any sort of competitive process," Pl.'s Mot. at 11, and claims that it "would submit a bid or offer for DHS financial services applications software if such a competition were held," id. at 12, these arguments are beside the point for purposes of establishing standing in this case,[4] because, as

[4] The cases cited by plaintiff in its attempts to establish standing are inapposite, because they all address a party's standing in the circumstance where there has been a change or modification to the very contract for which the protestor alleges that it would have competed. See CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 570 (2004), Northrup Grumman Corp. v. United States, 50 Fed. Cl. 443, 456 (2001), and CCL, Inc. v. United States, 39 Fed. Cl. 780 (1997). Clearly, this case presents very different circumstances.

previously discussed in detail, agency standardization decisions and product choices do not fall within this Court's jurisdiction. Indeed, the instant procurement is not the procurement of software, but the procurement of services for which Savantage failed to bid. For the reasons set forth in detail below, Savantage is not an interested party with respect to that procurement.

Savantage did not participate in any way with respect to any bidding associated with RFQ HSHQDC-08-Q-0018. The RFQ was issued only to prime contractors that had been selected as participants in the DHS EAGLE program, AR78, a group from which Savantage was excluded after EAGLE was competitively bid in 2006. AR942 et seq. As such, Savantage could not submit a bid as a prime contractor on the procurement at issue. Furthermore, even though Savantage could have participated in this procurement by electing either to team with or become a subcontractor to an EAGLE prime contractor that was submitting a quote, AR1011, it failed to do so. See Complaint. Savantage's decision not to contest the fact that it was not selected as an EAGLE vendor at the time of the EAGLE award, and its decision not to participate as a team member or subcontractor in the instant procurement are clearly business decisions that Savantage knew or should have known would have an impact upon the company. Savantage also knew or should have known that its own business decision would have repercussions, to include an inability to challenge the issuance of task orders under the terms of the EAGLE IDIQ Program. Clearly, Savantage is not an "interested party" in this procurement, and its protest should be dismissed for lack of standing.

IV. **The Government's Procurement Of Software Development And Integration Support Services Is Not Arbitrary Or Capricious**

A. **Standard Of Review**

This Court reviews allegations of error in the contract award process under the deferential standard set forth in 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 221 (2001). An award may be set aside only if the awarding agency's actions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706. To prevail, a protestor must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract. Wackenhut Int'l., Inc. v. United States, 40 Fed. Cl. 93, 94-95 (1998). Only agency action that is so egregious that it prevented the fair and honest consideration of the protestor's offer or similarly tainted the procurement process may be enjoined. Cent. Arkansas Maint., Inc. v. United States, 68 F.3d 1338, 1341-42 (Fed. Cir. 1995); accord CACI, Inc. v. United States, 719 F.2d 1567, 1573 (Fed. Cir. 1983).

In determining whether the agency's action was arbitrary or capricious, the Court must consider whether: (1) there was subjective bad faith on the part of procuring officials thus depriving the protestor of fair and honest consideration of its proposal; (2) there was a reasonable basis for the procuring officials' decision; (3) the procuring officials abused their discretion; or (4) the procuring officials violated pertinent statutes or regulations. Beta Analytics Int'l, Inc. v. United States, 44 Fed. Cl. 131, 136 (1999); Cincom Sys., Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). In applying these factors, the proper focus is the agency's articulated

rationale for the decision and the administrative record underlying it. Camp v. Pitts, 411 U.S. 138, 142-43 (1973); see also Tech Sys., 50 Fed. Cl. at 222 (the Court "cannot substitute its own judgment for that of the agency"); Winstar Commc'ns., Inc. v. United States, 41 Fed. Cl. 748, 757 (1998) (the court's role is limited to ensuring that the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made). Although the agency is required to proffer an explanation for its action, the explanation need not be extensive. Camp, 411 U.S. at 142-43.

A protestor must prove the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation by a preponderance of the evidence. Tech Sys., 50 Fed. Cl. at 222-24. However, because injunctive relief is extraordinary in nature, a plaintiff must demonstrate the right to such relief by clear and convincing evidence. Overstreet Elec. Co., Inc. v. United States, 47 Fed. Cl. 728, 732 (2000) (citing Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 522 (1991)); Cincom, 37 Fed. Cl. at 671 (citing 126 Northpoint Plaza LP v. United States, 34 Fed. Cl. 105, 107, appeal dismissed, 73 F.3d 379 (Fed. Cir. 1995)) (plaintiff must prove its case by clear and convincing evidence). A bid protestor cannot meet its burden merely by demonstrating that the record might have supported a different decision, nor may a bid protestor prevail merely by establishing the existence of oversights or errors in the evaluation process. Keco Indus., Inc. v. United States, 492 F.2d 1200, 1206-07 (Ct. Cl. 1974) (even assuming the Air Force should have known technical merits of a bidder's proposal, such proof is insufficient to establish that the procurement decision was arbitrary). Because contracting officials may exercise wide discretion in their evaluation of procurement regulations,

a bid protestor may prevail only when it is clear that the agency's determinations were irrational or unreasonable. Cincom Sys., 37 Fed. Cl. at 672; see also Filtration Dev. Co. v. United States, 59 Fed. Cl. 658, 666 (2004) ("the standards employed by the court . . . afford the military great latitude in the administration and execution of its affairs").

Injunctive relief for a disappointed bidder is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, Inc., 719 F.2d at 1581). In order to obtain a permanent injunction, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief based upon the following factors: (1) actual success on the merits; (2) that plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

**B. DHS's Procurement Of Software Development And Integration Services Through A Task Order Issued Under An Existing Contracting Vehicle Is Not Arbitrary And Capricious**

We have previously demonstrated that DHS's decision to standardize its software to Oracle and SAP is a matter that lies outside of the jurisdiction of this Court. We have also demonstrated that, even putting to one side Savantage's lack of standing with respect to the instant protest for services, Savantage is nonetheless statutorily precluded under 41 U.S.C. § 253j(d) from protesting the issuance of RFQ HSHQDC-08-Q-0018, because the award

contemplated is a task order under an IDIQ contract, and Savantage has failed to point to any increase in the scope, period, or maximum value of the underlying Eagle IDIQ contract. In this context, although Savantage attempts to voice numerous complaints regarding what it perceives to be violations of CICA and the FAR within the agency's Business Case and Analysis of Alternatives, i.e., the agency's standardization decision, as well as within a separate, irrelevant document misleadingly titled "Brand Name Justification," because Savantage cannot challenge the agency's standardization decision within this Court's jurisdiction, its arguments in this regard are not properly before the Court, and need not be addressed. See Ezenia, 80 Fed Cl. 60, 63 (2008).

[redacted]

[redacted]

Assuming that Savantage has standing to protest "the issuance of US Department of Homeland Security . . . Request for Quotation . . . HSHQDC-08-Q-0018 . . . ." such a protest would involve a complaint about the procedures that DHS employed to select a task order under an IDIQ as the appropriate vehicle by which to procure migration services. An examination of the record reveals that DHS's selection was entirely appropriate. "The law is well-settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily within the agency's discretion." ABF Freight Sys., Inc. v. United States, 55 Fed. Cl. 392, 409 n.13 (2003). As such, the type of contracting vehicle that the agency chooses to use to accomplish a given procurement, like the agency's determination of its needs, lies squarely within the discretion of the agency. See Amer. Tel. & Tel. Co. v. United States, 307 F.3d 1374, 1379 (Fed. Cir. 200); Scott v. United States, 78 Fed. Cl. 151, 154 n.3 (2007); see also FAR §§ 1.102(d), 1.102-4, 1.602, 16.101, 16.5.

There is no question that DHS's decision to proceed to acquire software development and integration support services by placing a task order under EAGLE was neither arbitrary nor capricious. [redacted]

In this case, Savantage seeks to exploit this Court's bid protest mechanism to disrupt and interfere with DHS's determination of its own needs after the completion of a long process that has involved the expenditure of millions of dollars on the failed E-Merge project, and extensive consultation with Congress, GAO, and OMB, and in the face of a thorough and well-reasoned business plan implemented through the Undersecretary for Management of the Department (currently the Acting Deputy Secretary for the Department of Homeland Security). Such

attempts cannot be countenanced. As this Court has noted, "[t]he bid protest mechanism has been put in place to protect the integrity of competition, not for the protection of product choice." Ezenia, 80 Fed. Cl. at 65. Product choice is all that is at issue in this bid protest, and it is beyond the reach of this Court. Accordingly, and for the reasons set forth in detail above, Savantage's motion for judgment on the administrative record should be denied, and its complaint dismissed for want of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court grant the Government's Motion to Dismiss.

Respectfully submitted,

JEFFREY S. BUCKHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-8254

Attorneys for Defendant

Dated: February 22, 2008

**CERTIFICATE OF FILING**

I hereby certify that on the 22nd day of February 2008, a copy of "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley