AGREED-UPON REDACTED COPY–MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| SAVANTAGE FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08-21 |
| THE UNITED STATES, | ) | (Judge Futey) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S STATEMENT OF FACTS**

Pursuant to Rule 52.1 of the Rules of the Court of Federal Claims, defendant respectfully submits the following Statement of Facts in support of its Motion for Judgment on the Administrative Record and states as follows:

1. The Department of Homeland Security ("DHS" or "Department") was created by a merger of 22 separate agencies from across the Federal Government for a joint mission support in securing the safety of the United States. AR774.

2. One of the challenges for the young Department was, and continues to be, the consolidation of multiple administrative systems within the component agencies. AR74.

3. Public Law 108-330, dated October 16, 2004, specifically refers to the fact that a strong Chief Financial Officer is needed within the Department "both to consolidate financial management operations, and to insure that management control systems are comprehensively designed to achieve the mission and execute the strategy of the Department." Pub. L. 108-330.

4. DHS's path has not been a smooth one, to include the eMerge[2] project, which resulted in the expenditure of millions of dollars in a failed attempt to integrate the Department's

financial systems. AR783.

5. However, as a result of the Department's efforts to date, DHS has consolidated decentralized, distinct financial systems from twenty-two agencies [redacted], and is now moving to consolidate to two integrated systems. AR782.

6. The Department's consolidation efforts are in response to recommendations made by GAO to strengthen DHS's financial management. AR777.

7. In addition, DHS has briefed and continues to brief the Office of Management and Budget with respect to its transformation and systems consolidation efforts. AR775.

8. DHS has documented its rationale concerning the consolidation decision and the reasons underlying it is clearly documented, and appears in the instant administrative record in the Business Case for Transformation and Systems Consolidation ("TASC"). AR 749 <u>et</u> <u>seq.</u>

9. The Department is migrating the various financial systems in increments, building on the lessons learned during each migration. AR105.

10. The TASC procurement requires the successful offeror to first perform assessments for migration efforts needed to transition components onto the TASC baseline. AR106-07.

11. The offeror will then formulate a comprehensive implementation plan for additional DSH components, building on lessons learned during the migration of each component. A105-07.

12. After a costly and unsuccessful attempt to consolidate the financial systems (known as E-merge) the Department decided in accordance with [redacted] to seek

prospective offerors from its Enterprise Acquisition Gateway for Leading-Edge Solutions (EAGLE) Indefinite Delivery/Indefinite Quantity (IDIQ) contracts, prime contractors to meet the Department's needs. AR809.

13. The EAGLE program is comprised of fifty-three IDIQ contracts, within five functional categories, and is specifically designed as the preferred source of Information Technology (IT) services for the majority of the Department's enterprise initiatives. AR969, AR976, AR1048.

14. Savantage competed to become an EAGLE Vendor in categories 3 and 4, and was not selected. AR942 <u>et seq.</u>

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

AGREED-UPON REDACTED COPY–MAY BE MADE PUBLIC

[redacted]

18. The competition for the RFQ [redacted] AR810.

[redacted] it issued the RFQ at issue in this litigation to contractors already qualified as prime contractors under the Department's EAGLE program. A78, [redacted]

20. The Department is competing the TASC acquisition in a functional category that has twenty contractors, seven of which are small businesses. AR78, AR969.

[redacted]

22. Under the EAGLE contracts, the vendors have a "fair opportunity" to compete for the task orders under the applicable functional category. See FAR § 16.505(b).

23. Under the EAGLE program, all businesses, to include small businesses, that are not EAGLE prime contractors, can become teaming partners with an EAGLE prime contractor in response to a specific requirement, such as TASC, or as a general team member through the subcontractor process, and, consequently, any firm in this market can participate in the TASC

acquisition as a teaming partner or as a subcontractor. AR1011.

24. At any time, any vendor can obtain information on the EAGLE program and its subcontracting opportunities on DHS's website at www.dhs.gov under the heading "Open for Business."

25. On November 20, 2007, DHS issued RFQ HSHQDC-08-Q-0018. AR78.

26. RFQ HSHQDC-08-Q-0018 describes the services to be provided under the contemplated EAGLE task order as follows:

> This task order will require a contractor (Solutions Architect) to: 1) Stand up the TASC Oracle Baseline in a DHS provided hosted facility; 2) Re-host [the Transportation Security Administration] and [Domestic Nuclear Detention Office] onto the TASC Oracle Baseline; 3) Design Interfaces between the TASC Oracle Baseline and DHS Enterprise Applications; 4) Develop Interfaces between the TASC Oracle Baseline and DHS Enterprise Applications[;] 5) Assess and Migrate selected Components onto the TASC Oracle Baseline; 6) Migrate TSA onto the Enterprise instances of PRISM (EPI) and Sunflower (SAMS), and 7) Provide continuing operations, maintenance and enhancements for the TASC Oracle Baseline.

AR106-07.

27. RFQ HSHQDC-08-Q-0018 does not require any successful offeror to purchase software. AR78-185.

28. Savantage did not submit a bid in response to RFQ HSHQDC-08-Q-0018. Complaint.

29. Savantage did not team with or become a subcontractor to an EAGLE prime contractor submitting a quote in response to RFQ HSHQDC-08-Q-0018. Complaint.

COUNTERSTATEMENT OF FACTS

Plaintiff has not submitted a separate statement of facts in accordance with Rules 52.1 and 56 of this Court. To the extent that plaintiff is relying upon the account of facts appearing in Section I of its brief, defendant notes that in that section, and in other sections throughout its brief, plaintiff bases a number of its contentions of fact and law upon documents attached in the appendix to its complaint, and also upon exhibits attached to its motion for summary judgment, rather than upon documents in the administrative record. See, e.g., Pl.'s Mot. at 5-7, 25-32. The purported "facts" contained in these documents, however, are not evidence in this case, and they must be discounted completely, if not formally stricken. The standard for judgment on the administrative record is, given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that an agency's decision was arbitrary or capricious or otherwise in not accordance with law. See Bannum Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005) (instructing the court to make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record."). Plaintiff cannot rely upon facts not in the record, particularly when it had the opportunity to attempt supplement the administrative record with documents supporting these additional facts and apparently chose not to do so.

Defendant further notes that plaintiff presents several legal arguments in its "Factual Background" section. See, e.g., Pl.'s Mot. at 4 ("While these documents contain a significant amount of analysis relating to the agency's alternatives, none of that information was derived through the competitive process required by the Competition in Contracting Act ('CICA') and

the Federal Acquisition Regulation ('FAR')"); id. at 5 ("Neither the solicitation nor any amendment thereto included the Justification and supporting documents as required by FAR 5.102(a)(6)."). Defendant does not agree with these conclusions, nor are they appropriately characterized as facts.

Respectfully submitted,

JEFFREY S. BUCKHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-8254

Attorneys for Defendant

Dated: February 22, 2008

AGREED-UPON REDACTED COPY–MAY BE MADE PUBLIC

**CERTIFICATE OF FILING**

I hereby certify that on the 22nd day of February 2008, a copy of "DEFENDANT'S STATEMENT OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley