# In the United States Court of Federal Claims

**No. 08-21C**
**BID PROTEST**

**(Originally Filed Under Seal March 17, 2008)**
**(Reissued for Publication April 15, 2008)**

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                            *
SAVANTAGE FINANCIAL                         *
SERVICES, INC.                              *   Motion for Judgment on the
                                            *   Administrative Record;
            Plaintiff,                      *   RCFC 52.1; Jurisdiction;
                                            *   41 USC § 253(a); Standing;
      v.                                    *   Procurement; Sole Source
                                            *   Procurement; Brand Name
THE UNITED STATES,                          *   Justification; Supplementation
                                            *   of the Administrative Record
            Defendant.                      *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Timothy Sullivan*, Washington, D.C., attorney of record for plaintiff, Savantage Financial Services, Inc., *Katherine S. Nucci*, of counsel, and *Jon W. van Horne*, of counsel.

*A. Bondurant Eley*, Department of Justice, Washington, D.C., with whom was *Acting Assistant Attorney General Jeffrey S. Buckholtz*, for defendant. *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director.

## OPINION & ORDER

*Futey*, <u>Judge</u>.

This matter is before the Court on Plaintiff's Motion For Summary Judgment On The Administrative Record, as well as Defendant's Motion To Dismiss Or, In The Alternative, For Judgment Upon The Administrative Record. Plaintiff has also filed a Motion To Supplement The Administrative Record. Plaintiff contests an allegedly improper sole source procurement by the Department of Homeland Security ("DHS") for financial systems application software. The specific solicitation identified by plaintiff, Solicitation No. HSHQDC-08-Q-00018 for "Transformation and Systems Consolidation," is for software development and integration support

services to support DHS in its transition to the alleged improperly-selected financial system. Plaintiff requests that this Court prohibit defendant from proceeding with this or any related solicitation until DHS conducts a competitive procurement in accordance with the law to select financial systems application software.

Plaintiff contends that defendant's selection of financial systems application software via a brand name justification violated the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253(a) (2008), because defendant failed to obtain full and open competition through use of competitive procedures. Plaintiff further asserts that defendant's Brand Name Justification violates various provisions of the Federal Acquisition Regulation ("FAR"). Finally, plaintiff avers that defendant's selection of software systems is arbitrary, capricious, and an abuse of discretion.

Defendant, on the other hand, argues that plaintiff has not identified a solicitation or procurement over which this Court would have jurisdiction. Specifically, defendant avers that its selection of financial systems application software was an agency decision to standardize its software, not a procurement. Additionally, defendant asserts that the solicitation identified by plaintiff is a task order request issued under an existing contract, and is thus precluded from this Court's bid protest jurisdiction by the Federal Acquisition Streamlining Act of 1994 ("FASA"). *See* 41 U.S.C. § 253j (2008). Defendant further contends that plaintiff lacks standing to challenge the award of a task order because it is not an interested party. Moreover, defendant asserts that the solicitation for software development and integration support services is neither arbitrary nor capricious.[1]

1.    Background

The Department of Homeland Security was created in 2003 by a merger of 22 separate federal agencies. Currently, five different financial systems application software solutions are in use among the 22 components: (1) Savantage's Federal Financial Management System ("FFMS")[2], (2) Oracle Corporation's Federal Financials Core Accounting System, (3) Systems Applications Products ("SAP"), (4) Integrated Financial Management Information System, and (5) Momentum.

In an effort to integrate DHS's financial systems, DHS began implementation of the Electronically Managing Enterprise Resources for Government Effectiveness

---

[1]It is not the procurement of support services that plaintiff contends is arbitrary and capricious, however; it is DHS's selection of financial systems application software that plaintiff contests.

[2]Savantage's FFMS is an Oracle-based commercial off-the-shelf software system. The DHS owns a paid-up, department-wide license for Savantage's FFMS, and its software is currently used by six DHS agencies.

and Efficiency ("eMerge²") project in 2003.  Subsequently, DHS abandoned the eMerge² project because it failed to build a system that provided value beyond what was already in place at DHS.  DHS then proposed instead to consolidate its financial systems application software by "migrating" DHS components to a shared software baseline in the Transformation and Systems Consolidation ("TASC") initiative.

On July 26, 2007, a DHS contracting officer signed a "Brand Name Justification" document, which indicated that DHS had selected the Oracle and SAP financial management systems as the baseline for its TASC initiative.  The Justification states that,[\*\*\*].[3]  No competition was conducted for the selection of the financial systems application software.  DHS did not make the Justification and its supporting documentation available for public inspection.

On August 22, 2007, DHS issued Solicitation No. HSHQDC-07-Q-00294 for services to manage the migration process to the Oracle and SAP systems.  The solicitation was open to prospective offerors from functional category four contractors under DHS's Enterprise Acquisition Gateway for Leading-Edge Solutions ("EAGLE") contracts, which are Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts.[4]  The solicitation was cancelled on October 4, 2007 because no offerors had submitted proposals.

On November 20, 2007, DHS issued the TASC Solicitation No. HSHQDC-08-Q-00018 as a task order request under the EAGLE contract, functional category four.  The purpose of this solicitation was the same as that issued on August 22, 2007: to provide support in pursuing the TASC initiative to migrate DHS's financial management software systems to Oracle and SAP.  It is this TASC solicitation that plaintiff protests in the instant action, on the basis that the underlying decision to use Oracle and SAP systems as the TASC baseline should have been made through competition.

Plaintiff Savantage Financial Services ("Savantage") filed this bid protest with the United States Court of Federal Claims on January 11, 2008.  Plaintiff seeks injunctive and declaratory relief prohibiting DHS from proceeding with the TASC solicitation or any related solicitation or task order without first complying with applicable statutory and regulatory requirements in its selection of a financial systems application software migration candidate for its TASC initiative.

2.      Discussion

---

[3]Admin. R., at 746-47.

[4]The EAGLE program is comprised of 53 IDIQ contracts within five functional categories.  Savantage competed unsuccessfully to become an EAGLE vendor in categories three and four.

3

A.      Standard of Review

When considering a Motion to Dismiss pursuant to RCFC 12(b)(1), "[t]he court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader." *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (*citing Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)).  When the court's subject matter jurisdiction is called into question, the plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Id*. (*citing Reynolds*, 846 F.2d at 748).

"[A] Motion for Judgment on the Administrative Record, pursuant to RCFC 52.1, is similar but not identical to a Motion for Summary Judgment, pursuant to RCFC 56." *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70, 97-98 (2006) (*citing Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005)).  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jay v. Sec'y, DHHS*, 998 F.2d 979, 982 (Fed. Cir. 1993).  In contrast, under Rule 52.1, the court must weigh the evidence when considering a Motion for Judgment on the Administrative Record.  *See Bannum*, 404 F.3d at 1355-56.  RCFC 52.1 is "designed to provide for a trial on a paper record, allowing fact-finding by the trial court."  *Id*. at 1356.

This Court reviews bid protest actions under the standards of the Administrative Procedure Act ("APA").  *See* 28 U.S.C. § 1491(b)(1)-(4) (2008).  The Court of Federal Claims has explained that "[a]gency procurement actions should be set aside when they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'without observance of procedure required by law.'" *KSD, Inc. v. United States*, 72 Fed. Cl. 236, 250 (2006) (*citing* 5 U.S.C. § 706(2)(A), (2)(D) (2000); *Bannum*, 404 F.3d at 1351).  In determining whether defendant has acted arbitrarily and capriciously, the court must consider four factors: whether (1) there was subjective bad faith on the part of the procuring officials depriving the protestor of fair and honest consideration of its proposal; (2) there was a reasonable basis for the procuring officer's decision; (3) the procuring officials abused their discretion; and (4) the procuring officials violated pertinent statutes or regulations.  *See Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 671 (1997) (*citing Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974)).

B.      Jurisdiction

The Tucker Act, as modified by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870 (1996), grants this Court jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a

proposed award or the award of a contract *or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement*." 28 U.S.C. § 1491(b)(1) (2008) (emphasis added).  Significant to our inquiry here, the "phrase 'in connection with' is very sweeping in scope.  As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." ***Ramcor Services Group, Inc. v. United States***, 185 F.3d 1286, 1289 (Fed. Cir. 1999).  Moreover, the Court of Federal Claims has found jurisdiction proper not only where an actual procurement is being challenged, but also where the claim is that a government agency is "*procuring* goods and services through a process that should have been the subject of competition; and that the failure to compete the procurement is *in violation of law*." ***CCL, Inc. v. United States***, 39 Fed. Cl. 780, 789 (1997).

       1.    *Was DHS's decision to migrate to Oracle and SAP a procurement?*

Congress has defined the term "procurement" to encompass "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2) (2008) (*cited in* ***OTI Am., Inc. v. United States***, 68 Fed. Cl. 108, 114 (2005)); *see also* ***Pub. Warehousing Co. K.S.C. v. Def. Supply Ctr. Phila.***, 489 F. Supp. 2d 30, 38 (D.D.C. 2007).  Here, plaintiff asserts that DHS's Brand Name Justification is a "procurement" as defined by Congress because it reflects DHS's determination of a need to consolidate its financial management software systems, and its selection of the Oracle and SAP systems to meet that need.[5]

Plaintiff also directs the Court's attention to ***CCL***, 39 Fed. Cl. 780.  There, the Department of Defense ("DOD") was restructuring its IT systems.  When plaintiff's IT systems contract expired, DOD expanded an existing contract with another IT systems provider to encompass the work under plaintiff's expired contract.  The Court of Federal Claims found jurisdiction to be proper because the government was "*procuring* goods and services through a process that should have been the subject of competition." ***Id***. at 789.  Plaintiff asserts that DHS's decision to expand the Oracle and SAP contracts was a procurement of goods and services like that in ***CCL***, and therefore should have been the subject of competition.

Defendant, on the other hand, argues that the decision to use the Oracle and SAP financial management software systems is not one which may be challenged under this Court's bid protest jurisdiction because it was an agency standardization decision, not a procurement.[6]  Defendant relies primarily on the recent decision in

---

[5]Pl.'s Mot. for Summ. J. on the Admin. R., at 14.

[6]Def.'s Mot. to Dismiss, at 9.  Notably, defendant stated during oral
(continued...)

*Ezenia!, Inc. v. United States*, 80 Fed. Cl. 60 (2008), where the Court of Federal Claims found that agency standardization decisions are not procurement decisions within the court's bid protest jurisdiction. 80 Fed. Cl. at 63.

There, Ezenia! was one of several contractors that provided commercial software to the Army. The Army subsequently made a standardization decision "*through a competitive process* to select the Adobe product, a product best suited to fulfill its needs." *Id*. (emphasis added). The court denied Ezenia!'s challenge to the Army's competitively-made decision, stating that such a "challenge would only be proper in this Court if the Army had chosen to standardize its software with the actual intention of knocking out other parties, for a sole-source procurement."[7] *Id*.

Plaintiff counters defendant's argument by asserting that standardization decisions are, in fact, procurement decisions, which fall within the statutory definition of "procurement," as discussed above.[8] Plaintiff argues that allowing agencies to decide on any selected item under the auspices of a standardization decision would "invalidate the carefully laid-out procedures in the FAR for acquiring supplies on a brand-name or sole-source basis, and allow agencies to easily circumvent CICA's competition requirements."[9] Moreover, plaintiff emphasizes that DHS's decision to standardize was made with the intention of knocking out other parties for a sole source procurement of Oracle and SAP software, thus conferring this Court's jurisdiction under the reasoning in *Ezenia!*.[10]

The Court finds plaintiff's arguments persuasive. Defendant's contention that the Court lacks jurisdiction is premised solely on the recent decision in *Ezenia!*. Nevertheless, the circumstances in *Ezenia!* are not so similar to the present case as

---

[6](...continued)
arguments that "just because an agency makes a determination as to its needs, it does not mean that a . . . procurement has occurred. Until the agency crosses that threshold [by purchasing] the particular product that a protester wants to provide, we don't really know whether . . . any . . . kind of procurement will occur." Tr. at 49:1-8. This is clearly at odds with the statutory definition of "procurement."

[7]Plaintiff argues that defendant's Brand Name Justification proves that defendant made the decision to standardize to the Oracle and SAP systems with the intention of knocking out other parties currently providing financial systems application software to DHS. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, at 4-5.

[8]Pl.'s Opp'n to Def.'s Mot. to Dismiss, at 5-6.

[9]Pl.'s Opp'n to Def.'s Mot. to Dismiss, at 5.

[10]Tr. at 17:6-17.

6

defendant would have the Court believe.  Significantly, unlike in *Ezenia!*, defendant has not identified any competitive process through which DHS decided to standardize to Oracle and SAP financial systems application software.  The failure to make that determination through a competitive process is exactly what Savantage is protesting.

The circumstances in the *CCL* case, however, are remarkably similar to the circumstances here.  Like DOD's decision to expand an IT systems contract in *CCL*, DHS has decided to expand its systems contracts with Oracle and SAP to encompass the work which is currently shared by five financial systems application software solutions.  That expansion of work fits squarely within the congressional definition of "procurement" because it is an acquisition of additional property or services from Oracle and SAP.  During oral arguments, defendant pointed out that no additional software licenses have actually been purchased.[11]  Nonetheless, the actual purchase of additional licenses is not necessary.  A mere determination that such property or services are needed constitutes part of the procurement process.  *See* 41 U.S.C. § 403(2).  The fact that DHS issued the TASC solicitation for services to support the transition to Oracle and SAP indicates that such a determination was made.  Defendant itself admits that Oracle and SAP appear in the Justification "because they are necessary, they would be necessary for someone saying what system is the agency actually contemplating transitioning to;"[12] and that DHS "anticipate[s] that software will be purchased."[13]  Therefore, defendant's decision to utilize the Oracle and SAP financial systems application software as its baseline for the TASC initiative constitutes a procurement, and properly invokes the jurisdiction of this Court.

C.     Standing

Under the Tucker Act, bid protest actions may be brought before this Court by an "interested party."  28 U.S.C. § 1491(b)(1).  The Court of Appeals for the Federal Circuit has adopted CICA's definition of "interested party," which includes "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (*citing* 31 U.S.C. § 3551(2) (1998)).  Thus, in order to have standing, a plaintiff must first demonstrate that it is an actual or prospective bidder.  Where a claim is made that the government violated CICA by refusing to engage in a competitive procurement, however, the Court of Federal Claims has held that "it is sufficient for standing purposes if the plaintiff shows that it likely would have competed for the contract had the government publicly invited bids or requested proposals."  *CCL*, 39 Fed. Cl. at

---

[11]Tr. at 44:6-14, 45:19-21.

[12]Tr. at 50:4-6.

[13]Tr. at 45:15-16.

790.  Additionally, plaintiff must demonstrate prejudice.  ***Meyers Investigative & Sec. Servs., Inc. v. United States***, 275 F.3d 1366, 1370 (Fed. Cir. 2002).  Where, as here, the claim is that the government failed to engage in a competitive procurement, plaintiff "need not show that it would have received the award in competition with other hypothetical bidders, [but rather] must show that it would have been a qualified bidder." *Id*. at 1370-71.

Plaintiff asserts that it has standing to challenge DHS's procurement of the Oracle and SAP financial software systems because the Oracle and SAP software systems will replace Savantage's system, which is currently used by various DHS agencies.[14]  Plaintiff further avers that it would submit a bid or offer for DHS financial systems application software if such a competition were held.[15]

Defendant contests plaintiff's standing on the basis that Savantage is not an actual or prospective bidder on the TASC solicitation, or an offeror whose direct economic interest would be affected by its award.[16]  Defendant further points out that the solicitation was only open to EAGLE contractors, and argues that plaintiff was therefore not qualified to compete.  In so arguing, however, defendant misses the point.  Plaintiff is not protesting the TASC solicitation, but is instead protesting the underlying decision to use Oracle and SAP software systems as the baseline for the TASC initiative.  Defendant fails to offer any alternative arguments contesting plaintiff's standing to challenge DHS's decision.  Because plaintiff currently supplies a competitive, Oracle-based, financial management software system to DHS, it clearly could have competed for the contract if DHS had bid it out.[17]  Furthermore, defendant has failed to point to any reason why plaintiff would not have been a qualified bidder to supply such a system.[18]  Therefore, plaintiff has standing to protest DHS's decision.

D.      Statutory and Regulatory Violations

---

[14]Pl.'s Mot. for Summ. J. on the Admin. R., at 11.

[15]Pl.'s Mot. for Summ. J. on the Admin. R., at 12.

[16]Def.'s Mot. to Dismiss, at 16.

[17]Pl.'s Mot. for Summ. J. on the Admin. R., at 5.

[18]Defendant attempts to argue that plaintiff would likely be ineligible to compete because a competition for financial systems application software would probably be conducted as a task order.  Mere speculation, however, cannot divest plaintiff of standing at this juncture.  *See* Tr. at 51:2-13, 53:2-4.

1.      *CICA*

CICA requires that federal government agencies solicit and procure bids through "full and open competitive procedures." 41 U.S.C. § 253(a) (2008). There are, however, two ways in which an agency can exempt itself from the full and open competition requirements. *See Corel Corp. v. United States*, 165 F. Supp. 2d 12, 19 (D.D.C. 2001).

First, "CICA itself contains several relatively narrow exceptions which are listed in section 253(c)." *Id*. Relevant for our purposes is the "sole source" exception, which permits an agency to forego full and open competition when "the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency." 41 U.S.C. § 253(c)(1). Before an agency may initiate a sole source procurement, however, it must "satisfy a series of requirements justifying and authorizing the use of noncompetitive procedures." *Corel Corp.*, 165 F. Supp. 2d at 19 (*citing* 41 U.S.C. § 253(f); 48 C.F.R. §§ 6.303-1, 6.303-2, 6.304, 6.305).

Alternatively, an agency may excuse itself from the requirements of CICA by procuring goods or services "in accordance with another federal procurement statute." *Id*. FASA is the federal procurement statute relevant to our inquiry here. FASA was intended "to streamline and simplify federal acquisition procedures." *Id*. at 20 (internal citations omitted). One way in which it accomplishes that goal is through "task or delivery order contracts." *Id*. (*citing* 48 C.F.R. §§ 16.501-1, 16.501-2). Task or delivery order contracts "essentially create a menu of goods or services of an indefinite quantity that can be ordered by an agency on an as needed basis." *Id*. *See also* 41 U.S.C. § 253k; 48 C.F.R. § 16.501-1. FASA excludes orders placed under task or delivery orders from this Court's bid protest jurisdiction, so long as "the task or delivery order contract itself has been obtained through full and open competition," unless an order is protested "on the ground that the order increases the scope, period or maximum value of the contract under which the order is issued." *Id*. (*citing* 41 U.S.C. § 253j(d)).

2.      *Sole Source Procurement*

Plaintiff contends that DHS violated the provisions of CICA because the Brand Name Justification failed to meet the requirements necessary to support a valid sole source procurement.[19] First, plaintiff avers that a sole source procurement was improper here because there are several responsible sources, including Savantage, from which offers for compliant financial management software systems could have been solicited. *See ATA Def. Indus., Inc. v. United States*, 38 Fed. Cl. 489 (1997)

---

[19]Compl., at 6; Pl.'s Mot. for Summ. J. on the Admin. R., at 15-16.

(finding that a sole source justification was improper where products and services in the challenged purchase order were available from protestor and on the open market).

Additionally, plaintiff asserts that, even if a sole source justification were proper, DHS's Brand Name Justification failed to comply with the applicable law.[20] The Federal Acquisition Regulation ("FAR") subpart 6.3, addresses the requirements for sole source procurements and brand name justifications. Plaintiff avers (1) that DHS did not make the Justification available to the public as required by FAR § 6.305; (2) that the Justification does not identify the estimated value of the required supplies or services, and does not identify the statutory authority excusing it from full and open competition, in violation of FAR §§ 6.303-2(a)(3) and (4); (3) that the Justification does not include a demonstration that the proposed contractor's qualifications are unique, in violation of FAR § 6.302-2(a)(5); (4) that the Justification does not include a description of DHS's efforts made to ensure that offers were solicited from as many potential sources as practicable, in violation of FAR § 6.303-2(a)(6); (5) that the Justification does not include a determination by the contracting officer that the cost will be fair and reasonable, in violation of FAR § 6.303-2(a)(7); (6) that the Justification does not include a description of the market research conducted or a statement of the reason it was not conducted, in violation of FAR § 6.303-2(a)(8); and (7) that DHS failed to include the Justification with the pending TASC solicitation for support services, in violation of FAR § 5.102(a)(6).[21]

Defendant argues that the Justification document is not a brand name justification for a sole source procurement, but rather is misleadingly titled and irrelevant.[22] Defendant further avers that the Justification explains the basis for acquiring software development integration services in support of the migration to Oracle and SAP, not the purchase of Oracle or SAP software systems.[23] Defendant asserts that this, together with the fact that DHS did not publish the Justification, demonstrates that DHS did not consider the document to constitute a brand name justification under FAR.[24]

Defendant, however, titled the document "Brand Name Justification," and under Section (4) of the document, offered a rationale/justification for selecting the

---

[20]Pl.'s Mot. for Summ. J. on the Admin. R., at 19.

[21]Pl.'s Mot. for Summ. J. on the Admin. R., at 21-23.

[22]Def.'s Mot. to Dismiss, at 21.

[23]Def.'s Mot. to Dismiss, at 21.

[24]Def.'s Mot. to Dismiss, at 22.

10

two [Oracle and SAP] baselines.[25]  Moreover, the Justification states that [\*\*\*].[26]  On its face, then, it appears that DHS was attempting to avoid the full and open competition requirements of CICA by means of this Brand Name Justification.

Moreover, plaintiff legitimately argues that other responsible sources for compliant financial management software systems exist.  The Justification states that [\*\*\*].[27]  The fact that three financial software systems in addition to Oracle and SAP currently service DHS in this capacity points to the fact that there are at least three additional responsible sources.  Furthermore, the Justification provides that [\*\*\*]; however, "the technical and administrative superiority of a given firm over all other possible sources has never been accepted as a justification for sole-source procurement from that firm."  ***Aero Corp. v. Dept. of the Navy***, 540 F. Supp. 180, 208 (D.D.C. 1982).  Instead, "[t]he place where . . . differences (in technical merit) appropriately should be considered is in evaluating proposals in connection with a negotiated procurement."  *Id*. at 209 (internal citation omitted).  It follows that DHS cannot merely select certain software systems because it feels they are most cost-effective.  This is not to say that cost and merit cannot be considered, but so long as there is more than one source competent to perform the contract, DHS must evaluate the merit of each offeror's product through the competitive lens.  Because there were additional responsible sources here, DHS's decision to use Oracle and SAP financial software systems via the Brand Name Justification is an improper sole source procurement in violation of CICA.  Consequently, we need not address the compliance of the Justification with the applicable provisions of FAR.

3.     *FASA*

Defendant argues additionally that there is no violation of CICA because the TASC solicitation is a task order request issued under DHS's EAGLE contract in compliance with FASA, and is therefore exempted from the full and open competition requirements of CICA.[28]  Defendant further asserts that because the EAGLE contract was an IDIQ contract that was competitively bid out, the solicitation may not be challenged in this Court.[29]

---

[25]Admin. R., at 746.

[26]Admin. R., at 747.

[27]Admin. R., at 746.

[28]Def.'s Mot. to Dismiss, at 12.

[29]Def.'s Mot. to Dismiss, at 13.

11

Defendant is correct that the TASC solicitation is identified as a task order issued under DHS's EAGLE contract. If plaintiff were challenging the TASC solicitation, this Court would indeed lack jurisdiction under FASA. Nevertheless, plaintiff is not challenging the TASC solicitation. Plaintiff is challenging DHS's decision to use Oracle and SAP software systems as the baseline for its TASC initiative. Defendant's arguments regarding the TASC solicitation are therefore irrelevant.

E.     Was DHS's Justification Arbitrary and Capricious?

Plaintiff argues that DHS's Justification was arbitrary and capricious, an abuse of discretion, and contrary to law. First, plaintiff contends that the reasons described in the Justification, Business Case, and Alternatives Analysis for eliminating Savantage's system from consideration as one of the two systems in the shared baseline are inaccurate and wrong.[30] Plaintiff further avers that all of the reasons cited by DHS for its selection of Oracle and SAP systems apply equally to Savantage's system, and that the Savantage system is audit-compliant.[31] Moreover, plaintiff asserts that its system [***] like the Oracle and SAP systems, and that the alleged inadequacies of Savantage's system listed by DHS in the Justification were mischaracterized.[32]

Defendant, again, focuses its arguments on the TASC solicitation under the EAGLE contracts, and asserts that the TASC solicitation for software development and integration support services was not arbitrary nor capricious.[33] Nonetheless, plaintiff has not contended that the TASC solicitation was arbitrary and capricious. Rather, plaintiff contends that DHS's decision to use Oracle and SAP financial systems application software is arbitrary and capricious. Defendant has not offered any arguments to the contrary.

Plaintiff has persuasively argued that the Justification for awarding sole source contracts to Oracle and SAP was arbitrary and capricious. First, and most significant, the sole source procurement violated the provisions of CICA requiring full and open competition. *See KSD*, 72 Fed. Cl. at 250 (stating that agency procurement actions should be set aside when they are not in accordance with law). Moreover, plaintiff asserts that there was no reasonable basis for the decision because all of the reasons cited by DHS in the Justification as supporting its decision to use

---

[30]Pl.'s Mot. for Summ. J. on the Admin. R., at 24.

[31]Pl.'s Mot. for Summ. J. on the Admin. R., at 25.

[32]Pl.'s Mot. for Summ. J. on the Admin. R., at 26-30.

[33]Def.'s Mot. to Dismiss, at 23.

Oracle and SAP as the TASC baseline are equally applicable to the Savantage system.[34] Defendant, however, fails to offer any evidence that there was a reasonable basis for the decision, or demonstrating that the contracting officer was not abusing her discretion when she selected Oracle and SAP despite the availability of other sources. Neither party has offered any evidence indicating subjective bad faith on the part of the contracting officer, but that is non-determinative in light of the other factors. The defendant's sole source procurement decision to award contracts to Oracle and SAP was arbitrary and capricious: there does not appear to be a reasonable basis for DHS's decision, the contracting officer abused her discretion, and the decision violated applicable law. That decision must therefore be vacated.

F.    Supplementing the Administrative Record

Plaintiff filed a Motion To Supplement The Administrative Record on February 27, 2007. Specifically, plaintiff has requested that the administrative record be supplemented with the documents contained in Plaintiff's Appendix In Support Of Its Motion For Preliminary Injunction And Application For Temporary Restraining Order[35], dated January 11, 2008, consisting of a Declaration of Michael Handberg with three attachments and all or portions of documents generated by, for, or about the DHS; and a Second Declaration of Michael Handberg attached to Plaintiff's Motion For Summary Judgment On The Administrative Record, filed February 8, 2008. Plaintiff contends that these documents are necessary to fill the gaps in the record, to provide information about the Savantage system for the purpose of demonstrating the system's capabilities to meet DHS's needs, to demonstrate the costs associated with acquiring additional licenses from Oracle, and to provide information regarding the actual performance of the various financial management systems currently used by DHS.[36]

This Court has acknowledged that, "in most bid protest cases, the 'administrative record' is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997) (*Cubic II*); *see Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 288, 293-94 (2000) (denying defendant's request to exclude

---

[34]Pl.'s Mot. for Summ. J. on the Admin. R., at 25.

[35]During a telephonic conference held on January 14, 2008, the Court agreed to rule on the merits of this case expeditiously. Therefore, plaintiff stated that it would not pursue its Motion for Preliminary Injunction And Application For Temporary Restraining Order, and defendant agreed not to take any action concerning the TASC solicitation until a decision was issued by the Court.

[36]Pl.'s Mot. to Supplement the Admin. R., at 3-4.

plaintiff's appendix despite plaintiff's failure to file a motion to supplement the administrative record). Rather, the agency retroactively creates an administrative record that is filed with the court for review.  *See* *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 155-56 (1997).  As recognized by the court in *Cubic II*, under such circumstances:

> the agency has to exercise some judgment in furnishing the court with the relevant documents.  In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery, aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action.  It follows that discovery as well as the breadth of the court's review has to be tailored in each case.

*Cubic II*, 37 Fed. Cl. at 350.  "[A]llowing the agency to retroactively delineate the scope of review may preclude the 'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform to determine whether the agency's action was arbitrary and capricious."  *Mike Hooks*, 39 Fed. Cl. at 156 (internal citations omitted).

Therefore, in order to preserve meaningful judicial review, the court has permitted the parties to supplement the administrative record in limited circumstances:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) *in cases where agencies are sued for a failure to take action*; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (*Cubic I*) (*citing* *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)) (emphasis added).  In cases where the government is being sued for inaction, meaning for failure to conduct a competition, the Court of Federal Claims has stated that "[t]here is less reason to

presume that the record assembled by the agency is presumptively complete." ***CCL***, 39 Fed. Cl. at 791.

Defendant continues to myopically rely on its lone argument that DHS's decision to use Oracle and SAP software is not a procurement, and therefore asserts that the ***Cubic I*** exception for cases where an agency allegedly failed to take action does not apply here. Nevertheless, the basis of plaintiff's suit is unquestionably DHS's alleged failure to use competitive processes in selecting financial systems application software for its TASC baseline. Defendant argues further that the declarations of Michael Handberg are not properly part of the administrative record because they were generated solely for purposes of this litigation. Defendant cites to ***Knowledge Connections, Inc. v. United States***, 79 Fed. Cl. 750, 760-61 (2007), where the Court of Federal Claims failed to allow the administrative record to be supplemented with two declarations which were not before the agency when it was making its procurement determination. ***Knowledge Connections*** did not, however, involve an alleged failure of the government agency to conduct a competition. Additionally, defendant contends that the declarations and Exhibits 4 and 6 are irrelevant because they do not relate to the procurement of services in the TASC solicitation. Again, defendant misses the point: it is not the TASC solicitation that is at issue; rather, it is the sole source procurement of financial systems application software.

Where there are additional materials that will assist the court in conducting a "thorough, probing, in-depth" review of the agency action, supplementation of the administrative record with those materials should be permitted. ***Meyers Investigative & Sec. Servs.***, 47 Fed. Cl. at 293-94 (*citing* ***Citizens to Preserve Overton Park, Inc. v. Volpe***, 401 U.S. 402, 415 (1971)). The declarations and other documents at issue here demonstrate the capabilities and performance of the Savantage system, which is relevant when considering whether DHS's decision to use Oracle and SAP was arbitrary and capricious. It is precisely because DHS never examined these materials when making its decision that it becomes necessary to supplement the administrative record now - to evaluate whether DHS should have considered these materials. Therefore, because the documents with which plaintiff seeks to supplement the administrative record are necessary for the Court to conduct a meaningful review, the record shall be supplemented.

3.    Conclusion

For the foregoing reasons, Plaintiff's Motion To Supplement The Administrative Record is ALLOWED. In addition, Plaintiff's Motion For Summary Judgment On The Administrative Record is ALLOWED, and Defendant's Motion To Dismiss is DENIED. The Department of Homeland Security is therefore enjoined from proceeding with Solicitation No. HSHQDC-08-Q-00018, or any related solicitation until DHS conducts a competitive procurement in accordance with the

law to select financial management systems application software.  The Clerk shall enter judgment in accordance with this Opinion.  No costs.[37]

      IT IS SO ORDERED.


                          **s/Bohdan A. Futey**
                          **BOHDAN A. FUTEY**
                                 **Judge**

---

[37]This opinion is being issued redacted.  Defendant submitted redactions in accordance with the court's order of March 17, 2008.