# In the United States Court of Federal Claims

### No. 08-21C & 09-113C
### <u>Bid Protest</u>

**(Originally Filed Under Seal April 15, 2009)**
**(Reissued April 22, 2009)**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                              \*
**SAVANTAGE FINANCIAL**                        \*
**SERVICES, INC.**                             \*   **Bid Protest, Motion to Enforce**
                                              \*   **the Court's Order, CICA,**
               **Plaintiff,**                  \*   **Undue Restriction on**
                                              \*   **Competition, Agency's**
        **v.**                                 \*    **Minimum Needs, Applicability**
                                              \*   **of Service Contract Act of 1965.**
**THE UNITED STATES,**                         \*
                                              \*
               **Defendant.**                  \*
                                              \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Timothy Sullivan*, Washington, D.C., attorney of record for Plaintiff, and *Katherine S. Nucci*, of counsel, and *Jon W. van Horne*, Gaithersburg, MD, of counsel.

    *A. Bondurant Eley*, Department of Justice, Washington, D.C., with whom was *Acting Assistant Attorney General Michael F. Hertz*, for Defendant. *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director.

### <u>OPINION & ORDER</u>

    *Futey*, <u>Judge</u>.

    This bid-protest matter is before the Court on the parties' cross-motions for judgment on the administrative record. Also before the Court is Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2008.[1] Plaintiff,

---

[1] In order to avoid confusion regarding the two administrative records and two hearings referenced in this Opinion, the Court shall include the case number in each reference to an administrative record, and the date when referring to statements made at a hearing.

Savantage Financial Services, protests the terms of a Department of Homeland Security ("DHS") Request for Proposals ("RFP" or "New TASC RFP") HSHQDC-09-R-00001, Transformation and Systems Consolidation ("TASC"), on the basis that it violates law and the Court's previous Order in *Savantage Fin. Servs. v. United States*, 81 Fed. Cl. 300, 311 (2008)("*Savantage I*"). Plaintiff requests that this Court issue a permanent injunction prohibiting DHS from proceeding with the New TASC RFP until it complies with applicable statutory and regulatory regulations, and this Court's Order of March 17, 2008.[2] In its Motion to Enforce, plaintiff contends that defendant has violated the Court's Order and requests that the Court impose sanctions against defendant, including the appointment of a special master to oversee defendant's compliance with the Court's Order, a revised injunction order, and an order directing defendant to cease the efforts plaintiff contends violate the Court's Order of March 17, 2008.

Plaintiff specifically asserts that the New TASC RFP is unduly restrictive of competition, and that it consequently violates the Competition in Contracting Act ("CICA"), the Federal Acquisition Regulation ("FAR"), and this Court's Order in plaintiff's prior bid-protest because the New TASC RFP is not being conducted in accordance with law. *See Savantage I*, 81 Fed. Cl. at 311. Plaintiff also alleges that defendant's failure to clarify the access instructions in the "Reference Library" clause by means of an amendment to the New TASC RFP was arbitrary, capricious, and contrary to law. In its Motion to Enforce, plaintiff argues that DHS has continued to pursue and implement its original TASC initiative ("Old TASC RFQ") to migrate all DHS components to the Oracle financial management system used by the Transportation Security Administration ("TSA"). Plaintiff claims that defendant has continued to implement the Old TASC RFQ in three ways: (1) by developing and implementing an automated interface between the Electronic Data Systems ("EDS") FedTraveler e-travel solution and the TSA Oracle system; (2) by purchasing or maintaining Oracle licenses for the TASC program; and (3) by tasking PriceWaterhouseCoopers ("PWC") with work that prepares the Coast Guard for the migration from its currently-used Oracle system to the TSA Oracle system.

Defendant, on the other hand, argues that it has fully complied with the previous Order of the Court and that it has formulated the New TASC RFP to obtain an integrated financial management, asset management, and acquisition management system solution based upon full and open competition and in accordance with the law.

---

[2] Plaintiff originally requested a temporary restraining order and preliminary injunction as well; however, the parties agreed during a telephonic conference held on February 23, 2009, that, in light of the Court's commitment to a prompt resolution of this matter, such actions were unnecessary. *See* Court's Order of Feb. 23, 2009, ¶ 1.

1. <u>Background</u>

This protest of the New TASC RFP follows a previous protest of the Old TASC RFQ brought by plaintiff, Savantage, in January of 2008. In that action, plaintiff protested what it contended was an improper sole source procurement by DHS for financial systems application software. Specifically, DHS had proposed to consolidate its financial systems application software by "migrating" twenty-two DHS components from five different software solutions to a shared Oracle software baseline. Following briefing and oral argument, the Court held that DHS's selection of Oracle as the migration candidate via a brand name justification was an improper sole source procurement in violation of the CICA. On March 17, 2008, the Court enjoined defendant from proceeding with the solicitation, "or with any related solicitation until DHS conducts a competitive procurement in accordance with the law" to select a software baseline. ***Savantage I***, 81 Fed. Cl. at 311.

On November 24, 2008, plaintiff filed Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2008, which is presently before the Court. Plaintiff's motion followed DHS's publication of a pre-solicitation notice on September 16, 2008, informing interested parties that DHS "is seeking a business partner to provide 1) an enterprise application that integrates end-to-end business processes in support of financial, acquisition and asset management and 2) integration services and program management support." Compl. at 5, ¶ 18. DHS subsequently issued a draft of the New TASC RFP on October 27, 2008, and solicited comments from interested parties. On January 9, 2009, DHS issued the New TASC RFP for provision of "an integrated financial management, asset management and acquisition management system solution and perform[ance of] TASC support services."[3] The solicitation is being conducted as an "advisory multi-step process," pursuant to FAR 15.202, which means the solicitation is conducted in two phases. In the first phase, DHS will advise prospective offerors that submit information in response to the RFP regarding their potential to be viable competitors. Phase I proposals were due on February 24, 2009. A second phase of the solicitation will take place at a later time; all parties who participated in the first phase may participate in the second, regardless of the advice provided by DHS. Originally, during Phase II, offerors within the competitive range were to participate in due diligence, which would have included group meetings and opportunities for one-on-one meetings, after which offerors could have revised their final proposals. The due diligence provision, however, was removed from the New TASC RFP by amendment on March 31, 2009. DHS will award the contract at the conclusion of Phase II.[4]

---

[3] Admin. R., 09-113C, at 000827, ¶ B.1.

[4] During oral argument held on April 7, 2009, defendant indicated that Phase II shall not commence until after the Court renders an Opinion in this matter. *See* Tr. (Apr. 7, 2009) at 10:2-7, 77:1-11.

Plaintiff filed this new bid-protest action in the United States Court of Federal Claims on February 23, 2009, and its First Amended Complaint on March 18, 2009. Also before the Court in the bid-protest action are: Defendant's Motion For Judgment On The Administrative Record And Response To Plaintiff's Motion For Preliminary And Permanent Injunctive Relief; Plaintiff's Cross-Motion For Judgment On The Administrative Record And Supporting Memorandum Of Points And Authorities; and Defendant's Reply To Plaintiff's Response To Defendant's Cross-Motion For Judgment On The Administrative Record. Before the Court in the contempt matter are: Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2008; Defendant's Response To Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2008; Plaintiff's Reply To Defendant's Response To Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2008; Defendant's Sur-Reply In Support Of Its Response To Plaintiff's Motion To Enforce The Court's Order Of March 17, 2008; and Plaintiff's Response To Defendant's Sur-Reply In Support Of Its Response To Plaintiff's Motion To Enforce The Court's Order Of March 17, 2008. The Court held oral argument on the Motion to Enforce and the parties' cross-motions for judgment on the administrative record on April 7, 2009.

2. <u>Discussion</u>

"[A] Motion for Judgment on the Administrative Record, pursuant to RCFC 52.1, is similar but not identical to a Motion for Summary Judgment, pursuant to RCFC 56." *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70, 97-98 (2006)(citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005)). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jay v. Sec'y, DHHS*, 998 F.2d 979, 982 (Fed. Cir. 1993). In contrast, the court must weigh the evidence when considering a Motion for Judgment on the Administrative Record under RCFC 52.1. *See Bannum*, 404 F.3d at 1355-56. RCFC 52.1 is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Id.* at 1356.

This court reviews bid-protest actions under the standards of the Administrative Procedure Act ("APA"). *See* 28 U.S.C. § 1491(b)(1)-(4) (2009). The Court of Federal Claims has explained that "[a]gency procurement actions should be set aside when they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'without observance of procedure required by law.'" *KSD, Inc. v. United States*, 72 Fed. Cl. 236, 250 (2006)(citing 5 U.S.C. § 706(2)(A), (2)(D) (2000); *Bannum*, 404 F.3d at 1351). In determining whether defendant has acted arbitrarily and capriciously, the court must consider four factors: whether (1) there was subjective bad faith on the part of the procuring officials depriving the protestor of fair and honest consideration of its proposal; (2) there was a reasonable basis for the procuring officer's decision; (3)

the procuring officials abused their discretion; and (4) the procuring official violated pertinent statutes or regulations. *See Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 671 (1997)(citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974)).

Significant to the court's consideration of these factors is the strong presumption that government officials act correctly, honestly, and in good faith when considering bids, and the well-settled notion that courts should respect acts of procuring officials when they exercise their discretionary functions. *Finley v. United States*, 31 Fed. Cl. 704, 706 (1994)(indicating that disagreement does not equal bad faith); *CACI Field Servs., Inc. v. United States*, 13 Cl. Ct. 718, 729-730 (1987); *Compubahn, Inc. v. United States*, 33 Fed. Cl. 677, 683 (1995); *Radva Corp. v. United States*, 17 Cl. Ct. 812, 818 (1989); *Howell Constr., Inc. v. United States*, 12 Cl. Ct. 450, 452 (1987). The court should not substitute its judgment for that of a procuring agency and should intervene only when it is clear that the agency's determinations were irrational or unreasonable. *Baird Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983); *see Cincom Sys.*, 37 Fed. Cl. at 672.

The court also has the "power to punish by fine or imprisonment, at its discretion, such contempt of its authority as . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 28 U.S.C. § 2521(b)(3) (2009). Despite possessing the authority to hold litigants accountable for failing to adhere to instruction, the court does not exercise its enforcement authority lightly. *See Filtration Dev. Co., LLC v. United States*, 63 Fed. Cl. 418, 421 (2004)(citing *Morris v. United States*, 37 Fed. Cl. 207, 214 (1997)). The Federal Circuit has imposed a demanding burden of proof on the moving party. *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1172 (Fed. Cir. 1986)(explaining that civil contempt "is recognized as a severe remedy"). A party alleging a violation of a court order must substantiate its allegations through clear and convincing evidence. *Id*. (citing *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985)). An implicit corollary to the elevated standard of proof imposed in a civil contempt proceeding is the proposition that a party will not be held in contempt if "there is a fair ground of doubt as to the wrongfulness of [the party's] conduct . . . ." *MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 885 (Fed. Cir. 1985)(quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

With this in mind, the moving party relinquishes its burden by showing, through clear and convincing evidence, that: "(1) the offending party violated an order of the Court; (2) the violation was more than *de minimis* or technical noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order." *Navajo Nation v. United States*, 46 Fed. Cl. 353, 358 (2000)(internal citation omitted); *see also Filtration Dev.*, 63 Fed. Cl. at 421.

*a. Alleged violations of the CICA and the FAR*

i.   Undue Restriction on Competition

Plaintiff alleges that the requirement of an integrated solution that combines asset, acquisition, and financial management systems in the New TASC RFP unduly restricts full and open competition because it effectively eliminates all solutions except for Oracle.   More specifically, plaintiff claims that this requirement exceeds defendant's minimum needs in violation of the FAR, and contends that the task of integrating a financial management system with asset and acquisition systems could be reserved for performance of the contract after a financial management system is selected.   Defendant counters plaintiff's allegation, arguing that the restriction is reasonably necessary to satisfy its needs, and that the contracting officer's determination to proceed with this requirement is owed deference.

Relevantly, FAR 6.101(b) requires that contracting officers use competitive procedures "that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."  48 C.F.R. § 6.101(b) (2009).  Restrictive provisions are permissible, but only "to the extent necessary to satisfy the needs of the agency or as authorized by law."  *Id*. § 11.002(a)(1)(ii) (2009).  Moreover, "[t]he determination of an agency's minimum needs 'is a matter within the broad discretion of agency officials . . . and is not for this court to second guess.'"  *CHE Consulting, Inc. v. United States*, 74 Fed. Cl. 742, 747 (2006)(quoting *Wit Assocs., Inc. v. United States*, 62 Fed. Cl. 657, 662 (2004)).  Nonetheless, where there is no rational basis for an agency's decision, or there was a violation of an applicable regulation or procedure, the court may find such decision to be arbitrary and capricious.  *Id*. at 746 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)).  Accordingly, the protestor must demonstrate that there was no rational basis for the agency's decision.  *Id*. at 746.

Plaintiff has not clearly established that defendant's requirement of an integrated asset, acquisition, and financial management systems solution is lacking a rational basis.   Defendant asserts that an integrated solution is "necessary to standardize, integrate, and decentralize systems across DHS component agencies."  Def.'s Mot. for J. on the Admin. R. at 17.  In support of its assertion of necessity, defendant points to its previous struggles to implement such a solution, and to the fact that both the failed eMerge² project and the Old TASC RFQ sought to implement a fully integrated solution as well.  According to Soraya Correa, Director, Office of Procurement Operations, "[t]he only 'change' that has occurred between the three solicitations is the *approach* to acquiring and implementing the fully integrated financial, acquisition, and asset management system."  Admin. R., 09-113C, at 002909.  Defendant also directs the Court to its market research, which demonstrates that acquisition of integrated systems is not uncommon for federal departments and agencies.  Def.'s Mot. for J. on the

Admin. R. at 21 (citing Admin. R., 09-113C, at 002383-84, 002391-96).  On the basis of its own experiences and those of other agencies, defendant has determined that its minimum needs will best be satisfied by acquisition of a currently operational, integrated system.

Plaintiff attempts to poke holes in defendant's decision-making rationale, asserting that the market research conducted by defendant did not reveal a common approach to acquisition of already integrated solutions.[5]  Pl.'s Cross-Mot. for J. on the Admin. R. at 5-7.  Plaintiff points to the fact that in both the eMerge² project and the Old TASC RFQ, as well as in three of the agency examples identified by defendant, an integrated system was the end result; plaintiff consequently argues that acquisition of an already integrated system does not constitute a "best practice."  Tr. (Apr. 7, 2009) at 57:23-25; 58:1-4.  More tellingly, however, plaintiff seeks to clarify its precise allegation: that the requirement improperly limits "the *solution* that can be proposed *rather than the integrators* that can propose a compliant solution."  Pl.'s Cross-Mot. for J. on the Admin. R. at 12 n.5.  At oral argument, plaintiff also spent much time addressing comments made by other offerors in response to the Request for Information ("RFI") stating that they considered the New TASC RFP to be a restrictive solicitation.  Tr. (Apr. 7, 2009) at 47:12-25.  Plaintiff admits, however, that [***] proposals were submitted during Phase I of the New TASC RFP, but argues - without support - that this does not indicate that full and open competition has been achieved *per se*.  *Id*. at 13.

Nevertheless, plaintiff's arguments do not divest defendant's decision of its rational basis.  As defendant properly recognized at oral argument, we learn just as much from our own and others' failures as we do from our successes; the Court would add that, at times, we learn even more from our failures.  Defendant here is facing a fifty-two million-dollar failure at integration, the sole benefits of which are the lessons learned through that experience.  In much the same way, defendant has been able to benefit from the knowledge gained through the successes and failures of other agencies.  Even so, "CICA imposes no obligation to supply a historical record of failures in order to substantiate a risk.  [The agency] has a responsibility to assess risks and avoid them before they become a historical fact."  *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1355 (Fed. Cir. 2008).

---

[5]  Plaintiff addresses four solicitations in its briefs: a Department of Agriculture solicitation for a financial management system that is "integrat[ed] with existing and emerging eGovernment initiatives such as eGovernment Travel Services;" a Department of Labor ("DOL") solicitation for an integrated solution which properly limited competition to providers offering Oracle Federal Financials; an Environmental Protection Agency solicitation for an "integrated solution composed of a COTS product or suite of products;" and a Federal Communications Commission solution for "an integrated core financial management system."  Admin. R., 09-113C, at 002508, 003445, 005258, 005507.

Moreover, there are several integrated solutions available in the market place, as demonstrated by the [***] offerors who submitted proposals during Phase I of the New TASC RFP.  Defendant argued at oral argument that the rules of competition do not require that the government purchase water and sand if it needs a concrete block; if a concrete block is available in the market, taxpayers need not be forced to pay for its reconstruction.  In this case, the "concrete block" – a fully integrated system – is available in the market.  Furthermore, despite plaintiff's reliance on comments made by other potential offerors to the RFI, competitors do not dictate an agency's minimum needs, the agency does.  The Court finds it logical that defendant would want to ensure its success by seeking a fully integrated system, both on the basis of its own experiences and those of other agencies and departments.  Naturally, plaintiff would prefer that defendant conduct the solicitation in a manner more favorable to plaintiff; that does not mean, however, that the solicitation is improper as it stands.  Because plaintiff has not met its burden of demonstrating that the requirement of a fully integrated, currently operational system lacks a rational basis, the Court defers to the agency's discretion in determining its own needs, and finds that the new TASC RFP is not unduly restrictive.

ii.   The "Due Diligence" Clause in the New TASC RFP

Plaintiff originally alleged that the "Due Diligence" clause at section L.4.6 of the New TASC RFP violated FAR 15.306(d)(1) and 15.306(e)(1) because it contemplated discussions without the participation of the contracting officer and because actions under the clause would have resulted in the unequal treatment of offerors.  Defendant argued against plaintiff's allegations, claiming they were without support.  Nevertheless, the Court does not reach this issue because the Due Diligence clause was removed from the New TASC RFP by amendment on March 31, 2009.  *See* Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. for J. on the Admin. R. at 16.

iii.   The Service Contract Act of 1965 and FAR 22.1006

Plaintiff alleges that the New TASC RFP violates the Service Contract Act of 1965 ("SCA") and FAR 22.1006 by failing to incorporate the required and applicable clauses at FAR 52.222-41 and 52.222-43.  Conversely, defendant argues that the New TASC RFP is not subject to the SCA because the principal purpose of the procurement is to acquire a sophisticated, integrated system, not to furnish services.

The SCA requires that every procurement or contract valued in excess of $2,500.00, entered into with the United States for the principal purpose of furnishing services through the use of service employees, contain provisions specifying the wages to be paid and the fringe benefits to be furnished to various classes of service employees.  41 U.S.C. § 351(a)(1)-(2) (2009).  Where the SCA

applies to a procurement, FAR 22.10006 further provides that the contracting officer must insert two specific provisions into the solicitation. *See* 48 C.F.R. § 22.1006. Whether the SCA applies to a particular contract or solicitation is initially determined by the contracting agency; however, "[i]f there is any question or doubt as to the application of the SCA to a particular procurement, the agency is required to obtain DOL's views." *Ne. Military Sales, Inc.*, 2002 Comp. Gen. Proc. Dec. P195, at *5 (Nov. 20, 2002)(citing FAR § 22.1003-7); *Ameriko, Inc.*, 96-1 Comp. Gen. Proc. Dec. P176, at *5 (Mar. 18, 1996)(citing *Dynalectron Corp.*, 65 Comp. Gen. 290 (1986)). Nonetheless, "[w]here a procuring agency does not believe that a proposed contract is subject to the SCA, there is no duty to notify DOL or include the SCA provisions in the solicitation." *Id.* at *7 n.1 (citing *Tenavision, Inc.*, 88-2 Comp. Gen. Proc. Dec. P114 at *2 (Aug. 8, 1988)). The court will refrain from reviewing a DOL determination as to whether the SCA applies to a particular contract; the court may nevertheless review the reasonableness of the contracting agency's decision as to "whether DOL's views should have been solicited." *Id*.

Here, defendant reasonably determined that the SCA did not apply to the New TASC RFP; its failure to incorporate the required provisions of the FAR into the solicitation consequently violates neither the SCA, nor FAR 22.10006. The New TASC RFP describes defendant's need for a "proven, integrated financial, asset and acquisition management system solution with the accompanying program management, change management and integration services to implement and sustain the proposed solution." Admin. R., 09-113C, at 000815. At first glance, as well as after a more detailed inquiry, it appears that the primary purpose of the contract is to provide an integrated system solution, with the secondary purpose of acquiring services to implement and sustain that solution. Defendant confirms that the principal purpose of the New TASC RFP is "to acquire a sophisticated, integrated system," and that the services necessary to implement that system are merely incidental to the performance of the contract. Def.'s Mot. for J. on the Admin. R. at 34. Plaintiff asserts nothing that contradicts this notion. Additionally, defendant informed the Court at oral argument that DOL has confirmed defendant's conclusion that the SCA does not apply to the New TASC RFP. Tr. (Apr. 7, 2009) at 36:5-7. For all of these reasons, the Court finds nothing unreasonable about defendant's decision not to include the SCA clauses, and therefore finds no violation of the SCA or FAR 22.10006.

### b. Alleged Arbitrary and Capricious Action Concerning the "Reference Library" Clause

Plaintiff amended its Complaint on March 18, 2009, to include an allegation that defendant's failure to clarify its interpretation of the access instructions in the "Reference Library" clause by means of an amendment to the New TASC RFP was arbitrary, capricious, and contrary to law because it violated FAR 15.206. Plaintiff contends that [***] "Reference Library" clause, demonstrate prejudicial treatment of plaintiff because defendant allegedly failed

to [***].  In the alternative, plaintiff asserts that the language in the clause was ambiguous, and failure to address that ambiguity was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  Defendant asserts, on the other hand, that there has been no competitive injury to plaintiff.  Tr. (Apr. 7, 2009) at 25:8-11; 19-20.

> The "Reference Library" clause in the New TASC RFP provides:
>
> A reference library is available to all prospective offerors that provides select documents that are referenced in the RFP. . ..  Offerors must log in after clicking the link and request access to the documents.  The Contracting Officer will manage the explicit access requests.  Due to the Sensitive But Unclassified (SBU) nature of the material presented in the Reference Library, the government requires that any company or subcontractor personnel that have access to this information prior to or after due diligence for proposal preparation must sign the NDA at Attachment J-7 prior to such access.  Signed NDAs should be maintained with the prime contractor and be available upon the request of the contracting officer.
>
> A DHS Form 11000-6 Non-Disclosure Agreement form . . . must be completed by an offeror's representative and submitted to the Contracting Officer before access is granted to the documents.

Admin. R., 08-21C, at DISC002586, ¶ L.4.5.  Plaintiff alleges that it had registered certain employees, all of whom were granted access by the contracting officer.  Compl. at 9, ¶ 31.  Based on plaintiff's understanding of the clause, however, plaintiff [***] completed signed NDAs, which were kept by plaintiff.  *Id*.  [***] NDA was among those kept by plaintiff.  *Id*.  Following [***] execution of a declaration in which he addressed specific documents in the Reference Library, the contracting officer [***] and informed plaintiff that [***].  *Id*. at 9-10, ¶ 32.  One day later, the contracting officer [***].  *Id*. at 10, ¶ 34.  Plaintiff contends that [***] companies that were granted access to the Reference Library interpreted the clause similarly, [***].

FAR 15.206 provides: "[w]hen, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation."  48 C.F.R. § 15.206(a).  The subsequent sections of the same provision provide procedural guidance on how to amend the solicitation.  *See Id*. § 15.206(b)-(g).  Plaintiff contends that defendant's failure to amend the New TASC RFP constitutes a violation of this provision; however, plaintiff has not pointed out a change in the requirements or terms and conditions of the RFP.  Plaintiff's argument amounts to mere differences in understanding between it and defendant.  This Court stated in its Order, dated March 18, 2009, that it would impede competition to permit some, but not all, potential offerors

access to the reference library. Nevertheless, that is not what has happened here. Plaintiff has had access to the Reference Library at all pertinent times, and no actual harm has been incurred. Moreover, defendant indicated at oral argument that [***]. Tr. (Apr. 7, 2009) at 24:19-21. As such, the Court finds nothing arbitrary and capricious about defendant's failure to amend the "Reference Library" clause in the New RFP, either for failure to comply with FAR 15.205, or for failure to address plaintiff's perceived ambiguities.

### c. Alleged Violations of the Court's Order of March 17, 2008

Plaintiff claims in its bid-protest that the New TASC RFP violates both the letter and intent of the Court's previous Order because its restrictive nature ensures that defendant will acquire exactly what it attempted to acquire with the Old TASC RFQ: the Oracle financial management system. Defendant asserts that plaintiff's claim requires a showing that the requirements of the New TASC RFP were established in bad faith, and contends that plaintiff has not satisfied such a showing.

The Court does not reach the issue of bad faith because it has already established that defendant is conducting the New TASC RFP properly and in accordance with the law. Plaintiff's central argument seems to be that if the Oracle financial management system is ultimately selected for the TASC program, the Court's Order of March 17, 2008 is necessarily violated. In fact, plaintiff asserts that defendant "decided several years ago that it wanted the Oracle financial management system to be the single system used throughout the agency, and [it] has not deviated from that myopic goal *notwithstanding the Court's Injunction Order*." Def.'s Cross-Mot. for J. on the Admin. R. at 20 (emphasis added). The Court's Order, however, did not enjoin defendant from selecting the Oracle financial management system, nor did it mandate that defendant select a stand-alone financial management software system, as plaintiff contended at oral argument; it merely enjoined defendant from proceeding with that specific illegal sole-source procurement of Oracle software. Tr. (Apr. 7, 2009) at 42:3-7; ***Savantage I***, 81 Fed. Cl. at 311. At this juncture, the Court finds no violation of law with regard to the New TASC RFP; the New TASC RFP is consequently not in violation of the Court's Order of March 17, 2008.

In its Motion to Enforce, plaintiff further alleges that DHS continued to pursue and implement its original TASC initiative to migrate all DHS components to the TSA Oracle system since March 17, 2008, in violation of the Court's Order enjoining such action, and therefore should be subject to sanctions. Plaintiff contends defendant proceeded with the Old TASC RFQ through three contractual vehicles: (1) by developing and implementing an automated interface between the FedTraveler e-travel solution and the TSA Oracle financial management system; (2) by purchasing Oracle licenses for the TASC program; and (3) by tasking PWC with work that prepares the Coast Guard for the migration from its currently-used, customized Oracle system to the TSA Oracle system.

Defendant, on the other hand, contends that it has fully and in good faith complied with the Court's Order of March 17, 2008, and all other orders entered by the Court in this litigation.  Def.'s Resp. to Pl.'s Mot. to Enforce at 1. Defendant argues that it cancelled Solicitation No. HSHQDC-08-0018 (Old TASC RFQ), that there have been no solicitations related to the Old TASC RFQ, and that defendant formulated the New TASC RFP based upon full and open competition.  With regard to plaintiff's specific allegations, defendant asserts that FedTraveler is being implemented agency-wide on a component-by-component basis, that there have been no purchases of Oracle licenses for the TASC program, and that there is no planned migration of the Coast Guard to the TSA Oracle system. *Id*. at 9-10.

i.  FedTraveler

Plaintiff alleges that defendant's continued implementation of the EDS FedTraveler interface contravenes the letter and intent of this Court's Order because defendant's actions encompass tasks contemplated by the Old TASC RFQ, from which defendant is enjoined from proceeding.  Pl.'s Mot. to Enforce the Court's Order, dated March 17, 2008 at 7-8.  More specifically, plaintiff contends that defendant has tasked EDS to develop and implement fully-automated, real-time interfaces between FedTraveler and the TASC Oracle Baseline and TASC SAP Baseline financial management systems, whereas EDS will merely replicate the current interfaces for other DHS components in a "temporary," non-standard interface with FedTraveler.[6]  Pl.'s Reply to Def.'s Resp. to Pl's Mot. to Enforce at 6-7.  Plaintiff maintains that this constitutes preferential treatment of the TSA Oracle system, and is "clear and convincing evidence" that DHS has proceeded with the development and implementation of the FedTraveler interface to the TSA Oracle Baseline system, which was a significant task in the Old TASC RFQ.[7]  *Id*. at 9.

Defendant, on the other hand, argues that with regard to the FedTraveler solution, defendant has complied with this Court's Order by returning to the *status quo* that existed prior to the TASC solicitation, which was the development of different interfaces between FedTraveler and each of the five different, existing

---

[6] The non-standard interface, according to plaintiff, will not include "split-pay" functionality and other enhancements.

[7] Plaintiff originally alleged in its Motion to Enforce that defendant is paying for the development of an agency-wide automated interface between the TSA Oracle financial management system and EDS' FedTraveler solution.  Pl.'s Mot. to Enforce at 7.  Upon review of DHS documents, however, plaintiff agreed that DHS has not been implementing an agency-wide interface, but rather has been implementing the FedTraveler interface with the financial management systems used by the DHS components.

financial management systems application software that service different DHS components.  Def.'s Resp. to Pl.'s Mot. to Enforce at 15-16.  Defendant also points to the fact that such interfaces have been "key to the implementation of the FedTraveler program from its 2004 inception," and asserts that FedTraveler and the E-Gov Travel initiative "have never involved[] the selection of any financial management systems application software for DHS."  *Id*. at 13.  Moreover, defendant contends that plaintiff's complaint of preferential treatment does not establish a violation of this Court's Order, and that many of Savantage's factual assertions and characterizations of the FedTraveler interfaces are false.[8]

The Court agrees with defendant that the agency-wide implementation of FedTraveler on a component-by-component basis does not violate the Court's Order of March 17, 2008.  Plaintiff's contention that the implementation of the FedTraveler interface to the TSA Oracle system demonstrates that defendant has proceeded with tasks of the Old TASC RFQ is without merit.  Plaintiff cites to three statements in the Old TASC RFQ's "Description/Specification/Statement of Objectives" ("SOO"), which address the "E-Gov Travel Service Interface Build": first, section C.1 stated that "[m]ajor systems integration initiatives such as E-Gov Travel Service and Grants Management need only be performed for the Shared Baselines rather than the disparate Component financial systems."  Pl.'s Mot. to Enforce at 8.  Second, section 4.3.2 of the SOO required the successful contractor to "generate a detailed design document for integration of the DHS E-Gov Travel Service (FedTraveler.com) with the TASC Oracle Baseline."  *Id*.  Finally, section 4.5 of the SOO stated "[t]he Solutions Architect shall integrate the DHS E-Gov Travel Service (FedTraveler.com) system with the Shared Baseline."  *Id*.

The record reveals that defendant has not proceeded with any of these tasks, but rather has returned to the *status quo* as it existed prior to the Old TASC RFQ.  Prior to the TASC solicitation, EDS had been tasked to develop and implement different FedTraveler interfaces with the financial management software systems used in each of DHS's components.  *See* Admin. R., 08-21C, at DISC000006, DISC000011-13, DISC000026-27, DISC000089-91, DISC000096.  Following this Court's Order of March 17, 2008, defendant has "begun to roll-out FedTraveler agency-wide on a component-by-component basis, without regard to what financial management systems application software a particular component is using."  Def.'s Resp. to Pl.'s Mot. to Enforce at 16 (citing Admin. R., 08-21C, at DISC000123-48, DISC000484-85).

Plaintiff further alleges that the New TASC RFP has omitted the requirement for a FedTraveler interface "for the obvious reason it is already being built by EDS for the TASC Oracle Baseline," and consequently infers that

---

[8]   Defendant specifically contradicts plaintiff's assertions that the FedTraveler/TSA interface is "real-time" and that the FedTraveler/FFMS interface is temporary.  Def.'s Sur-Reply at 5-6.

defendant is positioning the TASC Oracle Baseline system as the sole financial management software system that meets the needs and requirements of DHS and its components.[9]  Pl.'s Mot. to Enforce at 10.  Nonetheless, the Court has already considered whether there has been preferential treatment of one potential offeror over others in the New TASC RFP, and determined this was not the case.  The record reveals that the FedTraveler interface being integrated with the TSA Oracle system is neither real-time, nor does it include the split-pay functionality.  Def.'s Sur-Reply, Ex. A; Tr. (Mar. 12, 2009) 46:12-18, 65:3-4, 13-25 (Snow).  For all of these reasons, defendant's actions concerning FedTraveler do not violate this Court's Order of March 17, 2008.

ii.   Oracle Licenses

Plaintiff argues that defendant has continued to pay maintenance fees on Oracle licenses for the TASC program in violation of this Court's Order.[10]   In support of its argument, plaintiff points to two specific orders: Order HSHQDC-08-J-0152 ("Order 152") for maintenance and service on [***] bundle licenses, placed on June 18, 2008; and Order HSHQDC-08-J-00274 ("Order 274")[11] for [***], placed on September 25, 2008.  Admin. R., 08-21C, at DISC001102-06, DISC001461-69.  Plaintiff asserts that failure to pay maintenance and service costs on Oracle licenses would not necessarily result in the forfeiture of those licenses, and further contends that defendant's payment of these fees "would make little fiscal sense *unless* the RMTO was pursuing its intent to migrate all DHS components to the Oracle Baseline system."  Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce at 15; Pl.'s Resp. to Def.'s Sur-Reply to Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce at 10.

Defendant, on the other hand, asserts that maintenance fees are paid on existing licenses to maintain functionality, and that defendant has paid annual

---

[9] The Court notes that plaintiff's inference is based upon its assumption that the New TASC RFP must provide for exactly the same services as the Old TASC RFQ.  This is not the case.  This Court's Order of March 17, 2008, required merely that defendant refrain from proceeding with the Old TASC RFQ, and that it conduct a "competitive procurement in accordance with the law to select financial management systems application software."  *Savantage I*, 81 Fed. Cl. at 311.

[10] Plaintiff's original argument alleged that defendant had purchased new Oracle software licenses for the TASC program after the Court's Order of March 17, 2008; plaintiff, however, adjusted its argument after defendant produced the administrative record.  Pl.'s Mot. to Enforce at 11; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce at 12-14.

[11] Plaintiff refers to this in its briefs as "Order 575," but mistakenly uses the Requisition/Reference No.: RUIO-08-00575, rather than the Order Number.

maintenance fees on the licenses which are the subject of Order 152 since their initial purchase for the failed eMerge² program in 2005.  Furthermore, defendant argues that plaintiff's inference that continued payment of the maintenance fees can only mean that defendant is continuing to implement the Old TASC RFQ is unfair because defendant was paying maintenance fees on these licenses prior to any conception of the TASC initative.  Def.'s Sur-Reply at 7.  Defendant also claims that this Court's Order did not contemplate or require forfeiture of defendant's investments, and points to the fact that the [***], purchased by defendant in Order 274, do not contain the [***] system.  *Id*. at 8.

There is no question that defendant has continuously paid for maintenance and service fees on the Oracle licenses since they were originally purchased for the eMerge² project.  The issue is whether the payment of those fees after March 17, 2008, violated this Court's Order prohibiting defendant from continuing with the Old TASC RFQ.    The record does not establish that non-payment of maintenance fees would necessarily result in forfeiture.  Ms. Carrie Herndon, Contract Specialist for DHS, Office of Procurement Operations, Information Technology Acquisition Center, stated in a declaration that "if purchased licenses are not maintained, the end result is typically *increased costs* to the purchaser in one form or another;" and Ms. Avie Snow, Director of the Resource Management Transformation Office, testified at the evidentiary hearing held in conjunction with Defendant's Motion to Strike, that "the cost of licenses new is many times the cost of continued maintenance."  Admin. R., 08-21C, at DISC000672, ¶ 5 (emphasis added); Tr. (Mar. 12, 2009) at 55:8-12 (Snow).  Mr. Handberg testified at the evidentiary hearing that licensing agreements typically allow license holders to "get current" by paying "all the back maintenance;" nevertheless, the record does seem to point to some potential harm to defendant if it does not continue to pay maintenance fees.  Tr. (Mar. 12, 2009) at 86:1-7 (Handberg).  This, taken together with the more significant fact that defendant has paid these maintenance fees consistently since 2006 - notably prior to the conception of the TASC initiative - indicates to the Court that defendant's continued payment of maintenance fees in June 2008, does not violate this Court's Order of March 17, 2008.

iii.  The Coast Guard

Plaintiff alleges that the continued performance of a contract between the Coast Guard and PWC for the purpose of conducting a study of business processes to identify and evaluate best practices and needed system improvements at the Coast Guard's Financial Center, is "irrefutable proof that DHS has not altered its course to select the TASC Oracle Baseline System on a sole-source basis as the one financial applications software to be used by all agency components."  Pl.'s Mot. to Enforce at 13.  In support of this allegation, plaintiff asserts that the contract was originally based upon, and in furtherance of, the decision to select the TASC Oracle Baseline system for agency-wide use, and that the continued contract performance and amended contract tasks following this Court's injunction Order indicate that the Coast Guard is using PWC to position itself for the migration contemplated by the Old TASC RFQ.  *Id*. at 16, Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce at 16.

Defendant asserts that plaintiff's allegations are not only wrong, but that plaintiff has not produced any evidence in support of its arguments.  Specifically, defendant points to the fact that Oracle Federal Financials have been used by the Coast Guard since 2003, that there is no planned migration of the Coast Guard to TSA's Oracle System, and that the contract awarded to PWC in September 2007 had nothing to do with the selection of any shared baseline, but rather was for PWC to conduct a business review of its core financial business processes. Defendant also points to the specific language used in the contract: plaintiff takes issue with the term "out-of-the-box Oracle System;" however, defendant notes that the term "TASC Oracle Baseline" was the one used freely by the agency at the time of contracting, and that it would have been used if that were indeed the Oracle system to which the contract was referring.  Def.'s Sur-Reply at 9. Moreover, defendant argues that discussions of "migration" do not necessarily involve a migration to the TASC Oracle Baseline. *Id*. at 10.

Plaintiff has not met its burden of proof.  The contract entered into by the Coast Guard and PWC in September 2007 did not involve the TASC Oracle Baseline, nor the migration of the Coast Guard system to it.  The Coast Guard has used a highly customized version of the Oracle Federal Financial ("OFF") system since 2003.   Admin. R., 08-21C, at DISC001692.  Plaintiff argues that with regard to the task order for the provision of support "for the U.S. Coast Guard Finance Center (FINCEN) to move the current financial system(s) to a single out of the box Oracle system in accordance with the attached PWS," "there can be no question" that the referenced system was to be the TASC Oracle Baseline System. Admin. R., 08-21C, at DISC001723; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Enforce at 16.  Nonetheless, Marin J. Rajk, Deputy Assistant Commandant for Resources and Deputy Chief Financial Officer for the United States Coast Guard stated in his declaration that PWC was "under contract to identify how through a review of its processes the Coast Guard might reduce these customizations and extensions.  The gap analysis with OFF 'out of the box' is the most cost effective

and practical approach since [the Coast Guard] is already a licensed user of the software . . . ."  Admin. R., 08-21C, at DISC001692.  The record points to the fact that the out-of-the-box product referenced in the task order is merely the out-of-the-box, or non-customized, version of the system currently in use at the Coast Guard.  Plaintiff fails to identify any evidence demonstrating that continued performance of the PWC contract equates to continued pursuit of the Old TASC RFQ; the Court must consequently deny plaintiff's motion.

It is plaintiff's burden to clearly and convincingly demonstrate its entitlement to sanctions, which it has not done.  Defendant has not violated this Court's Order; the extraordinary remedy of sanctions is consequently not warranted.  Similarly, plaintiff is not entitled to injunctive relief in the bid protest case.  In order to obtain injunctive relief, plaintiff must succeed on the merits, plaintiff must demonstrate irreparable injury to plaintiff in the absence of an injunction, plaintiff must demonstrate that the harm to it outweighs any harm to defendant, and plaintiff must show that the public interest is served by enjoining defendant.  *See* ***FMS Corp. v. United States***, 3 F.3d 424, 427 (Fed. Cir. 1993).  Plaintiff has not succeeded on the merits of its case: plaintiff has not established any violation of law, abuse of discretion, or subjective bad faith with regard to the New TASC Solicitation; moreover, defendant has demonstrated a rational basis for each of the contracting officer's decisions challenged by plaintiff.  Accordingly, injunctive relief is not warranted.

3.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion To Enforce The Court's Order, Dated March 17, 2009, is DENIED, Defendant's Motion For Judgment On The Administrative Record is ALLOWED, and Plaintiff's Cross-Motion For Judgment On The Administrative Record is DENIED.  Plaintiff's Complaint in this bid-protest matter is consequently DISMISSED.  The Clerk shall enter judgment in accordance with this Opinion.  No costs.

**IT IS SO ORDERED.**

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**